LEO TABORN v. CLEVELAND HAMMONDS, AS SUPERINTENDENT OF THE DURHAM CITY SCHOOLS, AND DURHAM CITY BOARD OF EDUCATION

No. 8714SC1070

(Filed 20 September 1988)

1. **Schools § 13.2— reduction in funding—justifiable decrease in teaching positions —evidence required**

In order to establish a justifiable decrease in the number of teaching positions due to reduced funding under N.C.G.S. § 115C-325(e)(1)(l), defendant board of education must present evidence justifying the decrease in teaching positions beyond the mere fact that funding has been reduced. In this case,

defendant board failed to establish a justifiable decrease in the number of teaching positions for emotionally handicapped students because of decreased funding for the 1984-85 school year where the record does not explain how defendant reached the decision to reduce personnel.

**2. Schools § 13.2— teacher dismissal—reduction in force policy**

A city board of education followed its reduction in force policy in the midyear dismissal of plaintiff as a teacher of emotionally handicapped students after funds for the Exceptional Children Program were reduced.

**3. Schools § 13.2— teacher dismissal—no equitable estoppel**

Defendant board of education was not equitably estopped from dismissing plaintiff as a teacher of emotionally handicapped students in the middle of the school year after funds for the Exceptional Children Program were reduced.

Judge WELLS dissenting.

APPEAL by plaintiff from *Stephens, Judge.* Judgment entered 31 July 1987 in Superior Court, DURHAM County. Heard in the Court of Appeals 30 March 1988.

This appeal is the second appeal of this case to this Court. In *Taborn v. Hammonds,* 83 N.C. App. 461, 350 S.E. 2d 880 (1986) (hereinafter *Taborn I*), this Court vacated and remanded an appeal from an administrative decision by the defendant Durham City Board of Education (hereinafter the Board) to discharge plaintiff, Leo Taborn, a teacher in an Emotionally Handicapped classroom, during the middle of a school year. This Court found in *Taborn I* that the Board's decision to terminate plaintiff was not supported by the evidence and remanded the case for a new hearing consistent with N.C.G.S. § 150A-51 (recodified by § 150B-51, effective 1 January 1986) and the Board's policy regarding reduction in personnel. This Court further held that plaintiff received a fair and impartial hearing, and that the departure of a board member during the hearing and absence during the Board's deliberations did not deny him due process of his right to a fair tribunal. *Taborn v. Hammonds,* 83 N.C. App. at 472, 350 S.E. 2d at 886-87.

The facts surrounding plaintiff's firing and the Board's subsequent actions are set forth in *Taborn I* at 462-64, 350 S.E. 2d at 881-82 and only those facts relevant to this decision will be discussed. Pursuant to this Court's remand, plaintiff received a letter from defendant Cleveland Hammonds, Superintendent of Durham City Schools, dated 10 February 1987 explaining the basis of plaintiff's dismissal.

As a result of a teacher audit by the North Carolina De-partment of Public Instruction in 1984, the Durham City Schools were not funded for the 1984-85 school year for the number of positions which were previously filled in our system for the Exceptional Children program. In order to ad-just to this decrease in funding, it was necessary to take various actions. Insofar as these actions were to affect teachers within the system, I followed the Durham City Schools' policy regarding Reduction in Instructional Person-nel. A copy of this policy is attached to this letter and incor-porated herein for your reference.

At my direction a committee reviewed all available rec-ords of the teachers in the Exceptional Children program against the responsibility of the system to provide a mean-ingful educational program to our pupils. After determining that the system was retaining teachers properly certified and qualified in the areas to be serve[d], significant factors in the selection for dismissal were the extent of educational creden-tials and teaching experience in the North Carolina Public Schools. In reviewing your credentials it was determined that you had the lowest certification level, A, and the least amount of previous teaching experience in the North Caro-lina Public Schools. I also determined that a qualified and ex-perienced teacher was available to transfer into the position which you were teaching. For these reasons your name was included among those whom I recommended to the Board for dismissal no sooner than the end of the first semester of that school year.

On 25 February 1987, the Board held a second administrative hearing and concluded:

1. That the decrease in funding for the Exceptional Children Program . . . was based on a corrected head count [according to State and Federal funding guidelines].

2. That this constituted a justifiable decrease in funding; and a reduction in professional staff was an appropriate response to this decrease.

3. The Board policy regarding Reduction in Instructional Personnel and State law were followed in making the selec-

tion of which members of the professional staff were to be recommended for dismissal.

4. That the recommendation of the Superintendent that Leo Taborn be dismissed is substantiated by the preponderance of evidence [and ratified by the Board].

The trial court upheld the Board's decision, and found that the Board sufficiently explained the basis upon which plaintiff was terminated, that Board policy was followed, and that a rational basis existed between plaintiff being fired and the Board's decision.

Plaintiff appeals on three grounds: (1) that the Board did not establish a justifiable decrease in the number of teaching positions for emotionally handicapped students because of decreased funding in the 1984-85 school year; (2) that the evidence at the second hearing did not support the findings that plaintiff was discharged according to Board policy; and (3) that the Board is equitably estopped from discharging plaintiff.

*Glenn & Bentley, P.A., by Stewart W. Fisher, attorney for plaintiff-appellant.*

*Spears, Barnes, Baker, Hoof & Wainio, by Marshall T. Spears, Jr. and Gary M. Whaley, attorneys for defendant-appellees.*

ORR, Judge.

I.

[1] Plaintiff's first argument is that the Board did not establish a justifiable decrease in the number of teaching positions because of decreased funding in the 1984-85 school year. We agree.

N.C.G.S. § 115C-325(e)(1) states:

No career teacher shall be dismissed or demoted . . . except for one or more of the following:

. . .

1. A justifiable decrease in the number of positions due to district reorganization, decreased enrollment, or decreased funding . . . .

Taborn v. Hammonds

N.C.G.S. § 115C-325(m)(1) makes subsection (e) applicable to probationary teachers dismissed during the school year.

In *Taborn I*, this Court noted an "absence of findings regarding the relationship of headcounts in areas of the Exceptional Children Program to the termination of plaintiff . . . ." *Taborn v. Hammonds*, 83 N.C. App. at 469, 350 S.E. 2d at 885, and that the Board's decision did not specify in which areas the staff reductions occurred.

In the case *sub judice*, the Board made detailed findings of fact, including the following:

> That because of the aforementioned loss of funds [$58,560.00 in the Title VI-B program and $211,150.72 in the State Aid Exceptional Children program], the Exceptional Children Program, which had been staffed in reliance upon the initial proposed allotments, did not have sufficient funds for personnel expenses to pay all the professional . . . persons who had originally been assigned to said program for the 1984-85 school year.

> That at the request of the Superintendent and in accordance with Board policy, the Director of Exceptional Children and the Director of Instruction reviewed and made recommendations for consolidation and elimination of positions to serve the 1984-85 Exceptional Children Program enrollment within the State guidelines without detriment to the system's obligation to provide the most meaningful educational program to its students in accordance with its policy on Reduction in Instructional Personnel.

> That is what was recommended and approved that six aide positions be eliminated in non-self contained classes, that one teaching position be eliminated from the Speech Language Therapy Service, that two teaching positions be eliminated from the Academically Gifted, that one EMH teaching [position] be eliminated from Burton Elementary, that one EMH position be eliminated from Holton Middle, and that one EMH resource services position be consolidated for the Fayetteville Street and Y. E. Smith Elementary Schools.

While these findings of fact provide an adequate explanation for reducing specific personnel, they do not justify the initial decision culminating in a decrease in the number of positions in the Exceptional Children's Program.

The threshold issue that must be determined under N.C.G.S. § 115C-325(e)(1) is whether decreased funding automatically justifies a decrease in teaching positions. As we stated in *Taborn I*, our legislature expressly intended to protect teachers in special education programs and related areas from a reduction in funding. *Taborn v. Hammonds*, 83 N.C. App. at 466, 350 S.E. 2d at 883. The purpose of N.C.G.S. § 115C-325 *et seq.* (known as the Teacher Tenure Act, formerly N.C.G.S. § 115-142 *et seq.*) is "to provide teachers of proven ability . . . [protection] from dismissal for political, personal, arbitrary or discriminatory reasons." *Bennett v. Bd. of Education*, 69 N.C. App. 615, 619-20, 317 S.E. 2d 912, 916, *cert. denied*, 312 N.C. 81, 321 S.E. 2d 893 (1984) (citation omitted).

Upon learning of the decreased funding, defendants' conclusion was to reduce teaching positions. In light of the requirement for a "justifiable decrease in the number of positions" under N.C.G.S. § 115C-325(e)(1)(l) and the purpose of the Teacher Tenure Act discussed above, we conclude that the automatic decision to reduce teaching positions as the response to the funding cut is precisely the kind of decision from which our legislature intended to protect teachers.

It should be further noted that the Board's conclusions refer to a "justifiable decrease in funding" and that the "reduction in professional staff was an *appropriate* response." The statutory test in N.C.G.S. § 115C-325(e)(1)(l) is "[a] justifiable decrease in the number of positions" not a justifiable decrease in funding and an appropriate response.

The record before us does not explain how defendants reached the decision to reduce personnel. The only alternative defendants explored was to spread the reduction in funding over a two year period. We believe defendants adequately explained their reasons for not selecting this alternative, and we do not take issue with this decision.

However, there is little discussion regarding other alternatives defendants may have had. Richard F. Barber (Assistant Su-

perintendent of Business) testified that he only looked at personnel costs involved in the program to project the extent of the budget deficit. There was no testimony regarding consideration of other costs involved in administering the specific program or other programs, nor was there information concerning the entire budget's inclusion of teaching salaries, administrative costs, overhead costs, supplies and other personnel. Barber further testified that teachers' salaries are paid by local funds, and that "[i]f sufficient funds were approved [by the county commissioners] we could cover additional personnel." He did not testify regarding any request for additional funds.

While the record is unclear on the entire budgetary process, it is clear that the money lost was not earmarked for specific teaching positions. Barber later testified that there was a surplusage in the Durham City School budget in June 1984. The record does not reflect why the reduction was not absorbed within the entire budget or spread throughout the city school system.

Dr. Kenneth Warlick (Supervisor for Programs for Exceptional Children) testified that when he determined that the headcount total had been overestimated for that school year, he was instructed to draft a proposal to consolidate or eliminate positions and still maintain quality. Warlick further testified that they (Durham City Schools) had to reduce positions because of a reduction in funds.

Defendant Hammonds then testified that after Dr. Warlick and the committee made certain investigations, he (Warlick) made recommendations to consolidate or eliminate certain positions. The testimony is simply incomplete on the issue of why a decrease in funds allocated to a particular program *automatically* resulted in a reduction of teaching positions for that program.

Therefore, we hold that to establish a justifiable decrease in the number of positions due to decreased funding under N.C.G.S. § 115C-325(e)(1)(l), defendants must present evidence justifying the decrease in teaching positions beyond the mere fact that funding has been reduced. Black's Law Dictionary defines justifiable as "[r]ightful; defensible; [or] . . . that which can be shown to be sustained by law . . . ." Black's Law Dictionary 778 (rev. 5th ed. 1979).

In *Taborn I*, this Court "recognize[d] that program decisions are entirely within the expertise of the Durham City Board of Education, and we do not seek to nor deem it wise or allowable under the law of this state for us to interpose our judgment in these matters." *Taborn v. Hammonds*, 83 N.C. App. at 471, 350 S.E. 2d at 886. We emphasize that we are not interposing our judgment for that of the Board. The public policy of this state, as expressed in N.C.G.S. § 115C-325, allows defendants to eliminate teaching positions because of decreased funding only if justified. *See Taborn v. Hammonds*, 83 N.C. App. 461, 350 S.E. 2d 880.

If defendants can justify their decision to eliminate positions, we defer to their judgment in determining which positions to eliminate in any particular program providing they follow the statutory requirements. Defendants must always meet the initial requirement of justifying the decrease in positions before discharging any teacher covered by this statute.

Accordingly, this issue must be remanded once again to the Board for a new hearing consistent with this opinion.

## II.

[2] Plaintiff next argues that the evidence at the second hearing did not support a finding that he was discharged according to Board policy.

N.C.G.S. § 150A-51 (recodified by § 150B-51(b), effective 1 January 1986) prescribes our scope of review:

> The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the agency findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedure; or
>
> (4) Affected by other error of law; or

(5) Unsupported by substantial evidence admissible under G.S. 150A-29(a) or G.S. 150A-30 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

Under subsection (5), the standard of review is the "whole record" test. *Thompson v. Board of Education*, 292 N.C. 406, 233 S.E. 2d 538 (1977).

The 'whole record' test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo, Universal Camera Corp., supra.* On the other hand, the 'whole record' rule requires the court, in determining the substantiality of evidence supporting the Board's decision, to take into account whatever in the record fairly detracts from the weight of the Board's evidence. Under the whole evidence rule, the court may not consider the evidence which in and of itself justifies the Board's result, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.

*Id.* at 410, 233 S.E. 2d at 541.

In *Abell v. Nash County Bd. of Education*, 71 N.C. App. 48, 321 S.E. 2d 502 (1984), *disc. rev. denied*, 313 N.C. 506, 329 S.E. 2d 389 (1985), this Court followed the "general rule that 'arbitrary' or 'capricious' reasons are those without any rational basis in the record, such that a decision made thereon amounts to an abuse of discretion." 71 N.C. App. at 52-53, 321 S.E. 2d at 506. Relying on *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 28 L.Ed. 2d 136 (1971), the *Abell* Court ruled that a "reviewing court must be able to determine what factors were used to reach an administrative decision as well as whether said decision was arbitrary, capricious, an abuse of discretion, or not in accordance with law." *Taborn v. Hammonds*, 83 N.C. App. at 466, 350 S.E. 2d at 883, *citing, Abell v. Nash County Bd. of Education*, 71 N.C. App. at 53, 321 S.E. 2d at 507.

In the case *sub judice*, the Board made the following findings of fact:

That only two teachers had left the program due to normal attrition such as retirement, resignation, and leave of absence as must be considered in accordance with the Policy on Reduction in Instructional Personnel; therefore, it was necessary to determine which teachers would teach the remaining classes, and which teachers would be recommended for termination from employment.

That the Director of Exceptional Children and the Director of Instruction reviewed the qualifications, certification, evaluations and experience of all the professional staff in the Exceptional Children Program in order to make the necessary reductions to bring the personnel more in line with the funding available for said program.

That respondent, Leo Taborn, had the lowest level of certification, an A certificate, and the least amount of experience, zero years of experience, of any teacher in the entire Exceptional Children Program.

That Leo Taborn had no evaluation in his file as teacher. There was an evaluation in his file as an Aide. Although the evaluation in his file as an Aide was considered, because of the distinctions between the duties of an Aide and as a Teacher, it was not controlling in making the determination to recommend the termination of Leo Taborn.

That although the emotionally handicapped students were not miscounted, the recommendations from the Director of the Exceptional Children Program for reduction of positions and personnel did not result in the failure of the students in the 1984-85 school year being served appropriately; further, the various categories of exceptional children to be served in one school year often necessitate changes in teaching capacities from the prior year.

That funds are not allocated for sub-groups in the Exceptional Children Program but for the Exceptional Children's Program as one entity.

We must now apply the "whole record" test and determine if it supports the Board's conclusion that:

The Board policy regarding Reduction in Instructional Personnel and State law were followed in making the selec-

tion of which members of the professional staff were to be recommended for dismissal.

The Board based its decision on the following policy:

### POLICY REGARDING REDUCTION
### IN INSTRUCTIONAL PERSONNEL

When it has been decided that there shall be a reduction in the number of teachers or principals employed in the system, the following criteria shall be used in determining which individuals shall be dropped from employment:

a) To the extent possible, the decrease shall be met by normal attrition such as retirement, resignation, leave of absence, etc.

b) The requirements of the system to provide the most meaningful educational program to its pupils.

c) The qualifications and experience of the individuals being reviewed in relation to the position(s) to be filled.

d) The previous evaluations which have been made concerning the individuals being reviewed.

e) If other considerations are substantially similar, a career teacher shall be given preference in retention over a probationary teacher.

In *Taborn I*, the transcript of the hearing revealed "inconsistent and contradictory testimony . . . as to the weight each criterion in the Board's policy is to be given and as to how they were relied on . . . ." *Taborn v. Hammonds*, 83 N.C. App. at 469, 350 S.E. 2d at 885.

Here, Dr. Warlick testified on direct examination:

Q. When you began to look at the individuals, did you review and follow the policy regarding the reduction of forces?

A. Yes, it was followed exactly all five steps.

Q. Looking at it now from December 1984, January 1985, put your place back in time, back to the future and at that

time had there been a decrease in normal attrition, retirement, leave of absence to take care of these reductions?

A. To take care of the reductions.

Q. And the positions?

A. There were two instances, we had one individual that was on a leave of absence and we had a teacher working with the gifted program who was substituting for that individual.

. . .

Q. These two positions was all that was taken care of due to normal attrition in the first step of the reduction in force?

A. Right.

On cross-examination, Dr. Warlick admitted that his committee did not make projections in the normal attrition rate for the 1984-85 or 1985-86 years. He explained (on redirect) that even if he knew who was going to resign at the end of the 1984-85 school year, it would not save money during the year in question.

It is clear from Dr. Warlick's and defendant Hammonds' testimony that Dr. Warlick's committee considered the normal attrition rate before moving to the next criteria. Both Dr. Warlick and Hammonds testified that although normal attrition (criteria (a)) was applied first, the rest were given equal weight in their decision process.

The next three criteria, meaningful educational program, qualifications and experience of the individuals and previous evaluations, were considered together and adequately addressed by the committee.

We have thoroughly reviewed the whole record and hold that there was no "contradictory evidence or evidence from which conflicting inferences could be drawn." *Thompson v. Board of Education*, 292 N.C. at 410, 233 S.E. 2d at 541. There is nothing in the record that indicates plaintiff was a victim of a "last hired first fired" approach that this Court was concerned with in *Taborn I. Taborn v. Hammonds*, 83 N.C. App. at 470, 350 S.E. 2d at 885.

Further, we hold that the Board's decision to terminate Taborn, once they determined that teaching positions would be

decreased, was not arbitrary, capricious or an abuse of discretion. *Abell v. Nash County Bd. of Education*, 71 N.C. App. at 52-53, 321 S.E. 2d at 506. There is extensive evidence to support the Board's efforts in determining which teachers to terminate, and that the Board followed its policy regarding reduction in personnel.

### III.

[3] Plaintiff next contends that his firing was illegal under the doctrine of equitable estoppel. This issue was not raised in the first appeal, during the second hearing or on appeal to the court below.

The Supreme Court of North Carolina has stated that "[we] will not decide questions which have not been presented in the courts below . . . ." *White v. Pate*, 308 N.C. 759, 765, 304 S.E. 2d 199, 203 (1983), *citing*, *Plemmer v. Matthewson*, 281 N.C. 722, 190 S.E. 2d 204 (1972). *See also Childers v. Hayes*, 77 N.C. App. 792, 336 S.E. 2d 146 (1985), *disc. rev. denied*, 316 N.C. 375, 342 S.E. 2d 892 (1986) (contentions not raised at trial may not be raised for the first time on appeal).

Even if this issue were properly before this Court, there is insufficient evidence to support a finding of equitable estoppel.

Plaintiff excepts to the finding that his contract "contained a provision that State supported positions are subject to the allotment of personnel and funds from the State Board of Education and a further provision . . . if the position . . . is terminated, the contract shall be terminated. The duties of each employee were to be as assigned by the Superintendent."

This finding of fact is correct and so stated in plaintiff's contract. The problem is that plaintiff's position was not terminated; plaintiff was terminated. There was no reduction in the number of positions in his specific area. The reduction was in the entire Exceptional Children Program in which plaintiff was employed.

For the reasons set forth in I. above, we reverse and remand for a new hearing.

Affirmed in part, reversed in part, and remanded.

Judge PARKER concurs.

Judge WELLS dissents.

Judge WELLS dissenting.

My review of the whole Record convinces me that the Record supports the Durham City Board of Education's decision to terminate plaintiff's employment as a teacher; that its decision was not made upon unlawful procedure nor affected by any other error of law; and that its decision was not arbitrary or capricious. I therefore respectfully dissent from Part I of the majority opinion and vote to affirm the judgment of the Superior Court.