MARCUS SMITH, Petitioner v. RICHMOND COUNTY BOARD OF EDUCATION, Respondent

No. COA01-637

(Filed 21 May 2002)

**1. Appeal and Error— administrative board—proper standard of review**

    The Court of Appeals employs the proper standard of review regardless of that employed by the trial court; thus, the Court of Appeals applied the de novo standard of review where appropriate in an appeal from a school board decision to dismiss a principal even though the trial court applied the whole record test.

**2. Schools and Education— principal dismissal—continuance denied**

    The Richmond County Board of Education did not err by denying a motion to continue a hearing on whether a principal would be dismissed where petitioner had over two months to obtain evidence; he was represented by at least four attorneys during this time; he chose to request a hearing before the Board; his first continuance was granted; his next motion for a continuance did not identify particular evidence he was unable to obtain or provide any explanation for not being able to obtain the evidence; petitioner's acknowledgement that a particular affidavit could have been obtained quickly undermines his argument; and petitioner submitted other affidavits to the same effect.

**3. Schools and Education— principal dismissal—evidence submitted before hearing**

A principal dismissed by the Richmond County School Board failed to show how the Board was biased by exposure to the superintendent's documentary evidence prior to the hearing where the superintendent sent the evidence to each member of the Board 14 days before the hearing; the same evidence was ultimately presented to the Board; the Board admitted and considered all of petitioner's documentary evidence even though it had not been provided to the superintendent three days before the hearing, as required by statute; there was no indication that the individual members of the Board entered the hearing with a commitment to decide the case against petitioner; and there was no reason to presume that the members of the Board would be unable to refrain from reaching a conclusion merely because of lapse of time between exposure to the superintendent's evidence and petitioner's evidence.

**4. Schools and Education— principal dismissal—request for Board hearing—case manager waived**

A school board did not err by denying a principal's motion to have his case heard by a case manager where the principal had requested a hearing before the Board, as he was permitted to do by N.C.G.S. § 115C-325(h). By the same statute, a request for a hearing before the board forfeits the right to a hearing by a case manager.

**5. Schools and Education— principal dismissal—superintendent's opinion—admission not improper**

The submission of a school superintendent's personal beliefs about whether a principal should be dismissed did not amount to the admission or consideration of improper evidence where the superintendent's beliefs were implied in his recommendation of dismissal.

**6. Schools and Education— principal dismissal—admission of affidavits—consideration of hearsay**

The Richmond County Board of Education did not err by admitting certain affidavits in a hearing to determine whether to dismiss a principal for sexual harassment where all but one provided direct testimony from individuals with first-hand knowledge, and the remaining affidavit, while hearsay, was not prejudicial because the Board received other affidavits to the same

SMITH v. RICHMOND CTY. BD. OF EDUC.

[150 N.C. App. 291 (2002)]

effect and because a board may consider hearsay which provides background information helpful to understanding the matter before the Board.

### 7. Schools and Education— principal dismissal—evidence sufficient

There was substantial evidence in the whole record to support a school board dismissal of a principal for sexual harassment.

Appeal by petitioner from an order entered 26 January 2001 by Judge C. Preston Cornelius in Richmond County Superior Court. Heard in the Court of Appeals 20 February 2002.

*Andresen & Associates, by Kenneth P. Andresen and Christopher M. Vann, for petitioner-appellant.*

*Schwartz & Shaw, P.L.L.C., by Richard Schwartz and Brian C. Shaw; George E. Crump, III, for respondent-appellee.*

HUNTER, Judge.

Marcus Smith ("petitioner") appeals the superior court's order affirming the dismissal of petitioner by the Richmond County Board of Education ("the Board"). We affirm.

The pertinent facts and procedural history are as follows. As of June 2000, petitioner was the principal of the Leak Street School. By letter dated 20 June 2000, the Superintendent for Richmond County Schools, Dr. Larry K. Weatherly, notified petitioner that he was being suspended with pay as a result of allegations of sexual harassment and inappropriate conduct. Petitioner initially retained attorney Thomas M. Stern to represent him, and subsequently retained Donald E. Lewis, an attorney licensed to practice law in Pennsylvania but not in North Carolina. By letter dated 25 July 2000, and pursuant to the provisions of N.C. Gen. Stat. § 115C-325 (1999), Dr. Weatherly notified petitioner that he was being suspended without pay, and that Dr. Weatherly intended to recommend that petitioner be dismissed.

By letter dated 7 August 2000, petitioner requested a hearing before the Board. The hearing was scheduled for 18 August 2000. By letter dated 10 August 2000, Dr. Weatherly formally recommended to the Board that petitioner be dismissed. A copy of this letter was sent to attorney Lewis. Also by letter dated 10 August 2000, Dr. Weatherly, through his attorney Richard A. Schwartz, delivered to petitioner and

the Board all of the documentary evidence that Dr. Weatherly intended to present at the hearing before the Board.

By letter dated 15 August 2000, petitioner requested a continuance of the hearing until late September or early October. By order dated 16 August 2000, the Board denied the request for a continuance. Also in that order, the Board stated that it would not rule on any further motions by attorney Lewis until he complied with the requirements of N.C. Gen. Stat. § 84-4.1 (1999) regarding out-of-state attorneys practicing in North Carolina. By letter dated 18 August 2000, petitioner, through a third attorney, Derek G. Crawford, again requested a continuance, this time on the grounds that his brother was in intensive care, and that petitioner has "severe heart trouble" and had been directed by his doctor not to attend a hearing while his brother remained in intensive care. By order dated 18 August 2000, the Board agreed to continue the hearing until 24 August 2000.

On 21 August 2000, petitioner retained a fourth attorney, Kenneth P. Andresen. By letter dated 22 August 2000, petitioner requested an additional continuance for a period of thirty days in order to allow attorney Andresen to prepare for the hearing. By letter dated 24 August 2000, petitioner further requested that his case be referred to a case manager on the grounds that the Board would be unable to conduct a fair and impartial hearing because the Board had received and reviewed Dr. Weatherly's documentary material prior to the hearing, and also because one of the members of the Board had allegedly made a predetermination on the merits of the case prior to the hearing. By orders dated 24 August 2000, the Board denied the motion for an additional continuance, and denied the request that the case be referred to a case manager.

Following a hearing on 24 August 2000, the Board ordered that petitioner be immediately dismissed. On 22 September 2001, pursuant to subdivision (n) of N.C. Gen. Stat. § 115C-325, petitioner petitioned the Richmond County Superior Court for judicial review of the Board's dismissal. By order entered 26 January 2001, the superior court affirmed the Board's dismissal. Petitioner appeals.

On appeal, petitioner presents five arguments: (1) the Board erred in denying petitioner's 22 August 2000 motion to continue; (2) the Board's exposure to Dr. Weatherly's evidence against petitioner prior to the hearing constituted a violation of the applicable statute and a violation of his due process rights; (3) the Board erred by denying petitioner's request to have his case reviewed by a case manager;

(4) the Board erred by considering improper evidence; and (5) the Board's decision to dismiss petitioner was not supported by substantial evidence.

## I. Standard of Review

[1] Judicial review of an appeal taken pursuant to N.C. Gen. Stat. § 115C-325(n) is governed by the standards set forth in N.C. Gen. Stat. § 150B-51 (1999) (formerly § 150A-51). *Faulkner v. New Bern-Craven Bd. of Educ.*, 311 N.C. 42, 49, 316 S.E.2d 281, 286 (1984). Pursuant to N.C. Gen. Stat. § 150B-51(b), the court, in reviewing a final agency decision, may:

> affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or
>
> (6) Arbitrary or capricious.

N.C. Gen. Stat. § 150B-51(b); *Air-A-Plane Corp. v. N.C. Dept. of E.H.N.R.*, 118 N.C. App. 118, 124, 454 S.E.2d 297, 301, *disc. review denied*, 340 N.C. 358, 458 S.E.2d 184 (1995). Where a petitioner alleges that an agency's decision is based upon an error of law, is in excess of the agency's statutory authority, was made upon unlawful procedure, or is in violation of constitutional provisions, the court must undertake a *de novo* review. *Air-A-Plane Corp.*, 118 N.C. App. at 124, 454 S.E.2d at 301. *De novo* review requires a court to consider a question anew, as if not considered or decided by the agency previously, and, in conducting a *de novo* review, the reviewing court "must make its own findings of fact and conclusions of law and cannot defer to the agency its duty to do so." *Jordan v. Civil Serv. Bd. of Charlotte*, 137 N.C. App. 575, 577, 528 S.E.2d 927, 929 (2000). Where, however, a petitioner alleges that an agency's decision is not sup-

ported by substantial evidence or is arbitrary and capricious, the court must review the "whole record" to determine if the agency's decision is supported by substantial evidence. *Id.*

> [O]nce the trial court has entered its order, should one of the parties appeal to this Court,

> "[o]ur task, in reviewing a superior court order entered after a review of a board decision is two-fold: (1) to determine whether the trial court exercised the proper scope of review, and (2) to review whether the trial court correctly applied this scope of review."

*Id.* (citation omitted). Here, the superior court stated in its order that it reviewed all of petitioner's assignments of error under the "whole record" test. However, some of petitioner's assignments of error should have been reviewed under a *de novo* standard of review. "We will employ the proper standard of review regardless of that employed by the reviewing trial court." *Souther v. New River Area Mental Health,.* 142 N.C. App. 1, 4, 541 S.E.2d 750, 753, *affirmed,* 354 N.C. 209, 552 S.E.2d 162 (2001). Thus, in those instances in which the superior court improperly applied the "whole record" test rather than the *de novo* standard of review, we will employ the *de novo* standard of review.

## II.

[2] Petitioner first challenges the Board's denial of his 22 August 2000 motion to continue. The superior court concluded that the Board did not err in denying the motion to continue. However, the superior court incorrectly applied the "whole record" test. This issue involves an allegedly unlawful procedure by the Board, and is therefore subject to a *de novo* review.

Petitioner was first formally notified of the allegations against him on 20 June 2000. On 25 July 2000, over a month later, petitioner was notified that Dr. Weatherly intended to recommend that he be dismissed. Petitioner elected to request "a hearing within 10 days before the board on the superintendent's recommendation." N.C. Gen. Stat. § 115C-325(h)(3). The hearing was scheduled for 18 August 2000, but, upon petitioner's request, the Board agreed to continue the hearing until 24 August 2000. By letter dated 22 August 2000, petitioner requested a second continuance for a period of thirty days in order to allow attorney Andresen to gather additional evidence which petitioner alleged was "critical to a fair and proper presentation" of his

case. However, petitioner did not identify any particular evidence which might be critical to his case, nor did he provide any explanation for why such evidence had not already been gathered during the period of more than two months since petitioner had first been notified about the allegations against him.

In his brief to this Court, petitioner argues that the denial of the motion to continue prevented him from obtaining "an affidavit from his physician" stating that petitioner "was impotent" during the relevant period of time and that the alleged sexual conduct by petitioner "was impossible or extremely unlikely." Petitioner further contends that "[a]n affidavit from Petitioner's doctor could have been obtained quickly with no prejudice to the Superintendent."

Petitioner had over two months to obtain any evidence that he believed would be crucial to his case, and he was represented by at least four different attorneys during this time. Petitioner voluntarily elected to request a hearing before the Board within ten days, and his first request for a continuance was granted by the Board, allowing petitioner an additional six days to prepare for the hearing. Petitioner's subsequent 22 August 2000 motion for a continuance did not identify any particular evidence which he had been unable to obtain, or provide any explanation for why he had been unable to obtain certain evidence. Petitioner now alleges he could have obtained an affidavit from his physician regarding his impotence if given more time; however, petitioner's acknowledgment that such an affidavit could have been "obtained quickly" undermines his argument by emphasizing his failure to do so prior to the 22 August 2000 motion. We also note that petitioner did submit to the Board for its consideration his own affidavit and an affidavit from his wife alleging facts related to his impotence and, therefore, was not prevented from arguing the facts of his impotence to the Board as a defense to the sexual harassment allegations against him. For these reasons, we affirm the superior court's conclusion that the Board did not err in denying petitioner's 22 August 2000 motion to continue.

III.

[3] Petitioner next argues that the Board's exposure to Dr. Weatherly's evidence against petitioner prior to the hearing constituted a violation of the applicable statute and a violation of his due process rights. The superior court rejected this argument but incorrectly applied the "whole record" test. This issue is subject to a *de novo* review.

The hearing was originally scheduled for 18 August 2000. On 10 August 2000, Dr. Weatherly, through attorney Schwartz, delivered to petitioner and to the Board all of the documentary evidence that Dr. Weatherly intended to present at the hearing. The hearing was ultimately held on 24 August 2000. Petitioner argues that the fact that the Board was exposed to Dr. Weatherly's evidence fourteen days prior to the hearing constitutes a violation of the applicable statute and a violation of petitioner's due process rights. The superior court found that the procedure was not in violation of the statute and concluded that petitioner's due process rights were not violated.

N.C. Gen. Stat. § 115C-325(j2) governs the procedures of a "hearing conducted by the board," and provides that, in cases where there has been no prior review by a case manager,

the board shall receive the following:

   a. Any documentary evidence the superintendent intends to use to support the recommendation. The superintendent shall provide the documentary evidence to the career employee seven days before the hearing.

   b. Any documentary evidence the career employee intends to use to rebut the superintendent's recommendation. The career employee shall provide the superintendent with the documentary evidence three days before the hearing.

   c. The superintendent's recommendation and the grounds for the recommendation.

N.C. Gen. Stat. § 115C-325(j2)(3). Petitioner interprets the statute as prohibiting a board from receiving evidence from either party at any time prior to the hearing itself. The Board argues that other portions of the statute indicate a clear legislative intent that a board is to receive evidence from both parties prior to the hearing. For example, the Board quotes only the first part of N.C. Gen. Stat. § 115C-325(j2)(6) ("[n]o new evidence may be presented at the hearing . . .") and argues that, if no new evidence may be presented at the hearing, then the intention is that the evidence is to be presented to a board prior to the hearing. However, (j2)(6) in its entirety states:

No new evidence may be presented at the hearing except upon a finding by the board that the new evidence is critical to the matter at issue *and the party making the request could not,*

**SMITH v. RICHMOND CTY. BD. OF EDUC.**

[150 N.C. App. 291 (2002)]

*with reasonable diligence, have discovered and produced the evidence at the hearing before the case manager.*

N.C. Gen. Stat. § 115C-325(j2)(6) (emphasis added). This section clearly applies only where a case has already been heard by a case manager prior to the hearing before the Board, and, in this context, "new evidence" clearly refers to any evidence that was not previously considered by the case manager.

Unlike petitioner and the Board, our reading of the entire statute leads us to the conclusion that the statute is, in fact, silent on whether the Board should receive evidence from either party at any time prior to the hearing. Therefore, we are not persuaded by petitioner's argument that the Board's exposure to Dr. Weatherly's evidence prior to the hearing constitutes a violation of the statute.

Petitioner further argues that his due process rights were violated because the Board received Dr. Weatherly's documentary evidence fourteen days prior to the hearing and did not receive petitioner's documentary evidence until the day of the hearing. Again, we disagree. This Court has previously addressed in detail the due process implications in cases where members of a board are exposed to facts about a case prior to the hearing.

Our Supreme Court has noted that "[a]n unbiased, impartial decision-maker is essential to due process." Bias has been defined as "a predisposition to decide a cause or an issue in a certain way, which does not leave the mind perfectly open to conviction." "Bias can refer to preconceptions about facts, policy or law; a person, group or object; or a personal interest in the outcome of some determination." However, in order to prove bias, it must be shown that the decision-maker has made some sort of commitment, due to bias, to decide the case in a particular way.

. . .

Our Supreme Court has recognized that prior knowledge and discussion of the facts relating to a given adjudicatory hearing are inevitable aspects of the multi-faceted roles which Board members play. As long as Board members are able to set aside their prior knowledge and preconceptions concerning the matters at issue, and to base their considerations solely upon the evidence presented during the hearing, constitutionally impermissible bias does not exist.

*Evers v. Pender County Bd. of Education,* 104 N.C. App. 1, 15-16, 407 S.E.2d 879, 887 (1991) (citations omitted), *affirmed,* 331 N.C. 380, 416 S.E.2d 3 (1992). In *Evers,* the plaintiff contended that "both rumors and prehearing communications between the superintendent and the Board infected the Board and caused it to develop a preconceived notion of plaintiff's guilt of the actions alleged." *Id.* at 15, 407 S.E.2d at 887. Relying upon *Crump v. Bd. of Education,* 326 N.C. 603, 392 S.E.2d 579 (1990), this Court reiterated that "mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of Board members at a later adversary hearing," and concluded that the plaintiff had failed to show how the Board may have been biased by either the "rumors" or the prehearing communications between the superintendent and the Board. *Evers,* 104 N.C. App. at 18, 407 S.E.2d at 888. Moreover, "because of their multi-faceted roles as administrators, investigators and adjudicators, school boards are vested with a presumption that their actions are correct, and the burden is on a contestant to prove otherwise." *Crump,* 326 N.C. at 617, 392 S.E.2d at 586 (citing N.C. Gen. Stat. § 115C-44 (1987)).

In the present case, fourteen days prior to the hearing, Dr. Weatherly sent all of the documentary evidence he intended to use against petitioner to each individual member of the Board. This very same evidence was ultimately presented to the Board at the hearing. Although petitioner failed to "provide the superintendent with [petitioner's] documentary evidence three days before the hearing," as required by N.C. Gen. Stat. § 115C-325(j2)(3)(b), the Board nevertheless admitted and considered all of petitioner's documentary evidence at the hearing. There is no indication in the record that, as a result of receiving Dr. Weatherly's documentary evidence prior to the hearing, individual members of the Board entered the hearing with a commitment to decide the case against petitioner. Moreover, we find no reason to presume that members of the Board, presented with the superintendent's documentary evidence (which would later be admitted at the hearing) would be unable to refrain from reaching a conclusion as to petitioner's guilt merely because of a lapse of time (fourteen days) between exposure to the superintendent's evidence and exposure to petitioner's evidence. We hold that petitioner has failed to show how the Board may have been biased by exposure to Dr. Weatherly's documentary evidence prior to the hearing, and therefore affirm the superior court's conclusion that petitioner's due process rights were not violated.

IV.

**[4]** Petitioner next argues that the Board erred in denying his request to have his case heard by a case manager. The superior court rejected this argument but incorrectly applied the "whole record" test. This issue involves an allegedly unlawful procedure by the Board, and is therefore subject to a *de novo* review.

N.C. Gen. Stat. § 115C-325(h) provides that a superintendent must give written notice to an employee of his intention to recommend dismissal of the employee, and that within fourteen days after receipt of the notice, the employee may file with the superintendent a written request for either (1) a hearing by a case manager, or (2) a hearing (within 10 days) before the Board. N.C. Gen. Stat. § 115C-325(h)(2) and (3). The statute further states that "[i]f the career employee requests an immediate hearing before the board, he forfeits his right to a hearing by a case manager." N.C. Gen. Stat. § 115C-325(h)(3).

Here, by letter dated 25 July 2000, Dr. Weatherly notified petitioner that he intended to recommend that petitioner be dismissed, and, by letter dated 7 August 2000, petitioner requested a hearing before the Board. Thus, petitioner forfeited his right to a hearing by a case manager. We affirm the trial court's conclusion that the Board did not commit error by denying petitioner's motion to remand the case to a case manager.

V.

Petitioner next argues that the Board erred by admitting and considering certain evidence. We disagree.

The procedures prescribed by statute " 'for the dismissal of a career teacher are essentially administrative rather than judicial' " in nature, and the Board " 'is not bound by the formal rules of evidence which would ordinarily obtain in a proceeding in a trial court.' " *Crump*, 326 N.C. at 621, 392 S.E.2d at 589 (citation omitted). In considering the dismissal of an employee, it is proper for a board to consider and rely upon any evidence "that is of a kind commonly relied on by reasonably prudent persons in the conduct of serious affairs." N.C. Gen. Stat. § 115C-325(j3)(4); *Evers*, 104 N.C. App. at 18, 407 S.E.2d at 889. Moreover, even the introduction of incompetent evidence is not prejudicial in an administrative proceeding so long as there is other sufficiently competent evidence to support the material findings of the administrative agency. *See Campbell v. Board of Alcoholic Control*, 263 N.C. 224, 225, 139 S.E.2d 197, 199 (1964).

Petitioner first contends that it was improper for the Board to admit and consider: (1) the affidavit testimony of Dr. Weatherly that, in his opinion, petitioner was guilty of the sexual harassment allegations against him; and (2) the affidavit testimony of Dr. Weatherly and Dr. Jimmie Smith, the Assistant Superintendent of Human Resources for the Richmond County School System, that, in their opinions, two victims of the alleged sexual harassment, Ms. Kirkcaldy and Ms. Peek, were telling the truth in their allegations regarding petitioner.

[5] In order for a superintendent to initially recommend the dismissal of an employee, the statutory scheme implicitly requires that the superintendent must first conclude that the allegations and evidence of the employee's misconduct are credible, and that the employee likely engaged in the alleged misconduct. *See* N.C. Gen. Stat. § 115C-325(h)(2) (requiring the superintendent to "set forth as part of his recommendation the grounds upon which he believes such dismissal or demotion is justified"). The superintendent's personal beliefs on these issues are, therefore, necessarily implied in the fact that the superintendent has recommended the employee's dismissal. We are not persuaded that the express declaration of such beliefs appearing in the documentary evidence submitted to the Board amounts to the admission and consideration of improper evidence.

[6] Petitioner also contends that it was improper for the Board to admit and consider four particular affidavits. Linwood Huffman is currently the principal of Rockingham Junior High School, where petitioner was previously employed as an assistant principal. In his affidavit, Mr. Huffman provided only hearsay testimony that several female teachers at the school had told him that petitioner had made inappropriate comments to them, and that petitioner "aggressively approaches women in a sexual manner and makes them feel extremely uncomfortable." Robbie James, who was a teacher at Rockingham Junior High School while petitioner was the assistant principal, averred that petitioner had sexually harassed her, that he had asked her to hug him several times, that he constantly watched her, and that petitioner's presence made her "extremely uncomfortable." Amy Kesler, also a teacher at petitioner's former school, averred that petitioner had asked her to "get a beer or go out to a club" with him at least five or six times, and that these requests made her "very uncomfortable." Chasity Bledsoe, who worked as petitioner's secretary in July of 1999, averred that petitioner's persistent comments about her attractiveness made her so "extremely uncomfortable" that she resigned after only six days.

We do not believe the Board erred in admitting and considering the affidavits from James, Kesler, or Bledsoe, as these affidavits provided direct testimony from individuals who had first-hand knowledge of incidents bearing upon the various grounds alleged by the superintendent to support his recommendation that petitioner be dismissed. Furthermore, although Huffman's affidavit provided what would be considered hearsay evidence, we do not believe admission of this affidavit was prejudicial. In the first place, a board may properly consider hearsay evidence where such evidence provides background information that assists the board in understanding the matter before it. *See Baxter v. Poe*, 42 N.C. App. 404, 410, 257 S.E.2d 71, 75, *disc. review denied*, 298 N.C. 293, 259 S.E.2d 298 (1979). Furthermore, "[t]he admission of incompetent testimony will not be held prejudicial when its import is abundantly established by other competent testimony, or the testimony is merely cumulative or corroborative." *Board of Education v. Lamm*, 276 N.C. 487, 493, 173 S.E.2d 281, 285 (1970). Here, in addition to the affidavits of James, Kesler, and Bledsoe, alleging various incidents of sexual harassment and inappropriate behavior by petitioner, the Board received affidavits from Sharon Peek, Bonnie Lisenby, and Elizabeth Kirkcaldy, all alleging various incidents of sexual harassment by petitioner. We conclude that the Board did not commit prejudicial error in admitting and considering this evidence.

## VI.

[7] Finally, petitioner contends that the Board's decision is not supported by substantial evidence. The superior court correctly applied the "whole record" test, *see Jordan*, 137 N.C. App. at 577, 528 S.E.2d at 929, and determined that the Board's decision was supported by substantial evidence. We believe the superior court correctly applied this scope of review.

> The "whole record" test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*. On the other hand, the "whole record" rule requires the court, in determining the substantiality of evidence supporting the Board's decision, to take into account whatever in the record fairly detracts from the weight of the Board's evidence. Under the whole evidence rule, the court may not consider the evidence which in and of itself justifies the Board's result, without taking

into account contradictory evidence or evidence from which conflicting inferences could be drawn.

*Thompson v. Board of Education,* 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977) (citations omitted). We have carefully reviewed the "whole record" and hold that the Board's decision is supported by substantial evidence. The superintendent presented affidavits from three individuals who were employed at the Leak Street School while petitioner was the principal. Bonnie Lisenby averred that petitioner sexually harassed her by asking her to leave school to meet him, by saying to her, "[y]ou know you want it," and by rubbing himself against her. Sharon Peek averred that petitioner sexually harassed her by propositioning her for sex on numerous occasions, by asking her, "[d]o you want me?", by pressing his body against her, by unzipping his pants in front of her, and by touching her buttocks. Elizabeth Kirkcaldy averred that petitioner made sexual advances toward her, touched her, made sexually explicit comments to her, tried to kiss her, pressed his aroused penis against her, and propositioned her for sex.

The affidavits offered by petitioner provided testimony primarily seeking to impugn these three individuals by attacking their competency at work, by castigating their character (describing them as "flirty," "conniving," and "nasty"), by alleging that they dressed "inappropriately" and wore short skirts and "skimpy" tops, and by alleging they were "man-hater[s]" and "did not like men." The individuals providing affidavits for petitioner sought to portray petitioner as an honest and professional man, and alleged that they had not ever personally witnessed any inappropriate behavior by petitioner. We hold that there was substantial evidence to support the Board's decision to dismiss petitioner.

For the reasons stated herein, we affirm the superior court's conclusions on the various issues raised by petitioner, and we thereby affirm the Board's dismissal of petitioner.

Affirmed.

Judges WALKER and BRYANT concur.