IN THE MATTER OF: NORTH WILKESBORO SPEEDWAY, INC.

No. COA02-660

(Filed 1 July 2003)

## 1. Taxation— valuation of property—weight assigned conflicting evidence

The Property Tax Commission's findings concerning the value of a race track were supported by sufficient evidence. Although the taxpayer introduced evidence that the property had a lower value, the Commission assigned greater weight to the County's independent appraiser and its decision was not arbitrary or capricious.

IN RE N. WILKESBORO SPEEDWAY, INC.

[158 N.C. App. 669 (2003)]

**2. Taxation— property tax commissioner—knowledge of case—failure to recuse**

A property tax commissioner's failure to recuse herself from a hearing was not error even though the taxpayer contended that certain questions and comments by the commissioner exhibited a bias against the taxpayer. The mere fact that a decision-maker enters a hearing with knowledge of the subject does not necessarily lead to the conclusion that the decision-maker is closed to the evidence. All of the commissioners in this case repeatedly asked questions through both sessions of the hearing in a diligent attempt to understand the facts and opinions presented to them.

**3. Taxation— property tax commission hearing—procedure— evidence presented after motion to dismiss denied**

The County waived its right to appeal the property tax commission's denial of its motion to dismiss by presenting evidence. Although the Rules of Civil Procedure do not apply strictly in proceedings before these commissions, the Administrative Code does not set out a procedure for motions to dismiss, the principles of sound trial management apply, and there is no reason to depart from the usual approach. Furthermore, the Commission has broad discretionary power to examine documents.

Appeal by taxpayer from final decision entered by the North Carolina Property Tax Commission on 18 January 2002. Heard in the Court of Appeals 13 March 2003.

*McElwee Firm, P.L.L.C., by John M. Logsdon, for the taxpayer-appellant.*

*Vannoy, Colvard, Triplett, & Vannoy, P.L.L.C., by Anthony R. Triplett, for appellee Wilkes County.*

HUDSON, Judge.

North Wilkesboro Speedway, Inc. ("Taxpayer" or "Speedway"), a North Carolina corporation, owns real property ("the Property") located in Wilkes County, North Carolina. Located on the Property is a race track facility. Prior to 1995, NASCAR sponsored two annual races at North Wilkesboro Speedway as part of its Winston Cup Series. In 1995, New Hampshire International Speedway, Inc., and Speedway Motorsports, Inc., each acquired fifty percent of the shares

of North Wilkesboro Speedway, Inc. Before these entities purchased the Speedway, NASCAR assured them that the Winston Cup race dates used by the Speedway could be moved to other race tracks. After the transfer of ownership, one race date was moved to Texas Motor Speedway and the other race date was moved to New Hampshire International Speedway. The last NASCAR-sanctioned race held at the Speedway was on 29 September 1996.

The Property consists of a 43.2 acre tract adjoining, but without direct access to, U.S. Highway 421. Improvements to the Property include a five-eighths mile oval paved race track with a pit and garage area; bleachers, grandstands and towers with private viewing suites; and various other structures, including restrooms and concession stands.

In 1998, Wilkes County ("the County") performed a county-wide tax reappraisal, and assigned a value of $8,580,400 to the Property. In early 1999, taxpayer requested an appraisal review. On 12 May 1999, the Tax Administrator's office advised taxpayer that it had inspected and reviewed the Property and recommended an increase in valuation to $9,560,300. Taxpayer requested a hearing on this valuation before the Wilkes County Board of Equalization and Review ("the Board"). After a hearing at which taxpayer presented an appraisal and testimony of an independent appraiser, the Board upheld the $9,560,300 valuation. From that decision, taxpayer appealed to the Property Tax Commission.

On 26 October 2001, the Property Tax Commission held a hearing on the Taxpayer's appeal. Taxpayer presented evidence through the testimony and appraisal report of its independent appraiser, Harvey P. Jeffers, and through the director of real estate for Speedway Motorsports, Inc., Robert E. Rourke. Mr. Jeffers appraised the Property at $2,800,000, concluding that its best and highest use is as a local (non-NASCAR) race track.

The County offered the testimony of its tax supervisor, Alexander Hamilton, and its independent appraiser, Arthur W. McElhannon. Hamilton testified that the County based its valuation of the Property on an appraisal using the cost approach, and assigned to the property a value of $9,560,300. McElhannon, on the other hand, appraised the Property using both the cost approach and the income approach. McElhannon concluded that the highest and best use of the Property is as a racing test and practice facility, and that the value of the Property was $7,125,000.

On 18 January 2002, the Commission issued a final decision concluding that the County had employed an arbitrary and capricious method when it appraised the Property and that the value assigned to the Property substantially exceeded the true value in money of the Property. The Commission ordered the County to revise its tax records to reflect a value of $7,125,000.

## ARGUMENT

Taxpayer first argues that the findings and conclusions of the Commission regarding the income approach to valuation are arbitrary and capricious and not supported by the evidence. We disagree.

We review final decisions of the Property Tax Commission under the "whole record" test as governed by G.S. § 105-345.2, which provides that a decision may be reversed or modified if appellant's substantial rights have been prejudiced because the Commission's findings, conclusions, inferences, or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

G.S. § 105-345.2(b) (2001).

"The 'whole record' test is not a tool of judicial intrusion; instead, it merely gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence." *In re Owens*, 132 N.C. App. 281, 286, 511 S.E.2d 319, 323 (1999), *appeal after remand*, 144 N.C. App. 349, 547 S.E.2d 827 (2001), *disc. review denied*, 354 N.C. 361, 556 S.E.2d 575 (2001). Under the "whole record" test, we must determine "whether the [Commission's] findings are supported by substantial evidence contained in the whole record." *Whiteco Outdoor Adver. v. Johnston County Bd. of Adjust.*, 132 N.C. App. 465, 468, 513 S.E.2d 70, 73 (1999). Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Id.*

**IN RE N. WILKESBORO SPEEDWAY, INC.**

[158 N.C. App. 669 (2003)]

Our courts have long held that "it is the function of the administrative agency to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence." *In re McElwee*, 304 N.C. 68, 87, 283 S.E.2d 115, 126-27 (1981). As the reviewing court, "[w]e cannot substitute our judgment for that of the agency when the evidence is conflicting." *Id.* at 87, 283 S.E.2d at 127. Thus, we may not "weigh the evidence presented to the [Commission] and substitute [our] evaluation of the evidence for that of the [Commission]. *In re Amp*, 287 N.C. 547, 562, 215 S.E.2d 752, 761 (1975).

Moreover,

The "whole record" test does not permit the reviewing court to substitute its judgment for the agency's as between two reasonably conflicting views; however, it does require the court to take into account both the evidence justifying the agency's decision and the contradictory evidence from which a different result could be reached.

*Floyd v. N.C. Dept. of Commerce*, 99 N.C. App. 125, 128, 392 S.E.2d 660, 662 (1990), *disc. review denied*, 327 N.C. 482, 357 S.E.2d 217 (1990) (citations omitted). As to the credibility of the witnesses, this Court has noted that:

Credibility determinations and the probative value of particular testimony are for the administrative body to determine, and it may accept or reject in whole or part the testimony of any witness. Moreover, even though the ALJ has made a recommended decision, credibility determinations, as well as conflicts in the evidence, are for the agency to determine.

*Oates v. N.C. Dept. of Correction*, 114 N.C. App. 597, 601, 442 S.E.2d 542, 545 (1994) (internal citations and quotation marks omitted).

We note initially that taxpayer has brought forth arguments concerning only exceptions 1, 2, 3, 4, 5, and 7. Thus, the exception 6 is deemed abandoned. N.C. R. App. P. 10(a).

[1] Taxpayer first argues that the Commission's findings of fact numbers 9, 14, and 19 are not supported by the evidence. The enumerated findings of fact read as follows:

9. A typical fee paid by Winston Cup race teams for practice sessions on NASCAR-sanctioned tracks would be $5,000 per day plus

additional expenses for emergency medical personnel. The fee for practice sessions on non-sanctioned tracks, such as the subject property, by Winston Cup race teams, would range between $3,000 and $3,5000 per day.

14. The highest and best use of the subject property, which represents a former NASCAR-sanctioned Winston Cup racetrack, is the use as a practice and test facility. The numerous race teams located within the proximity of the subject property would contract for use of this facility to perform practice and test sessions.

19. The true value in money of the subject property as of January 1, 1999, was $7,125,000.

After a review of the whole record, we find that there is sufficient evidence to support these findings of fact. As to finding number 9, Mr. McElhannon, explained both in his testimony before the Commission and in his appraisal report that he arrived at the $3,500 figure based upon his interviews with various NASCAR team members:

> Mr. Jerry Freeze, team manager for Petty Enterprises, . . . indicates typical fees on Winston Cup Series tracks for practice sessions at $5,000 per day with an additional expense to the team for emergency medical personnel to be on standby. This fee was also confirmed with Mr. Bob Bahre [owner of New Hampshire International Speedway] who indicates practice sessions at his New Hampshire Speedway are also $5,000 per day. Based on additional interviews with other race team managers, such as Mike Brown with Bill Davis Racing, Richard Yates with Robert Yates Racing, and Steve Hmeil with Dale Earnhardt, Inc., (DEI), this is a typical fee for Winston Cup teams on NASCAR-sanctioned tracks. Mr. Mike Brown with Bill Davis Racing indicated that their team would probably be reluctant to pay the $5,000 per day for non-Winston Cup-sanctioned tracks, but would be more inclined to pay between $3,000 and $3,500 per day.

In addition, Mr. McElhannon testified before the Commission that:

> the majority of people that . . . that I interviewed said that they would be reluctant to pay the $5,000 a day since it wasn't a sanctioned track. So, I've heard $3,800 a day for Charlotte and I've heard $1,700 a day for Bristol. I'm going based on information of people who would be using this, on what they'd be willing to pay.

IN RE N. WILKESBORO SPEEDWAY, INC.

[158 N.C. App. 669 (2003)]

Mr. McElhannon also testified that there are more than eighty-five race teams within a 100-mile radius of the Speedway and that there is an ongoing demand by these race teams to use the Speedway as a practice and test facility. The race teams in close proximity to the Speedway include the Winston Cup Series, Busch Grand National Division Series, Craftsman Truck Series, NASCAR Late Model Stocks, SMART Modifieds, Late Model Super Trucks, Limited Late Model Super Sport, Mini Stocks, Super Mini Stocks, Legends, Street Stocks, Six Cylinders, U Cars, Goodys-Series, Hooters Pro Cup, and numerous other classifications. Based upon demand and the number of race teams in close proximity to the Speedway, Mr. McElhannon concluded "that the maximally productive use of the subject facility is for a test and practice track." This evidence supports finding 14 as well as others that appellant does not challenge.

Based upon the projected income from the use of this facility as a practice and test facility, combined with the value of other structures located on the Property, Mr. McElhannon valued the Property at $7,125,000, the value the Commission settled on in finding 19.

Although taxpayer introduced evidence that tended to show that the Property had a much lower value, it is clear that the Commission assigned greater weight to the County's expert appraisal. As "[c]redibility determinations and the probative value of particular testimony are for the administrative body to determine," *Oates*, 114 N.C. App. at 601, 442 S.E.2d at 545, we "cannot say that the Commission erred in adopting the position of certain experts over that of others." *In re Appeal of Westinghouse Electric Corp.*, 93 N.C. App. 710, 716, 379 S.E.2d 37, 40 (1989). Thus, we conclude that the substantial evidence in the record is sufficient to support the Commission's findings of fact. In light of this conclusion, we also hold that the Commission's decision was neither arbitrary nor capricious, as the Commission reasonably concluded from the evidence that the market value of the Property is $7,125,000.

[2] Taxpayer next argues that "the participation of Commissioner Linda Absher in the consideration of the evidence and the Final Decision" prejudiced taxpayer because "Commissioner Absher exhibited a bias for the County and against taxpayer during the hearing" and that it was error for her not "to recuse herself upon taxpayer's motion to do so." We disagree.

This Court has held that there is a "presumption of honesty and integrity in those serving as adjudicator" on a quasi-judicial tribunal.

*Taborn v. Hammonds,* 83 N.C. App. 461, 472, 350 S.E.2d 880, 887 (1986) (citations and quotation marks omitted), *appeal after remand,* 91 N.C. App. 302, 371 S.E.2d 736 (1988), *reversed,* 324 N.C. 546, 380 S.E.2d 513 (1989). "A party claiming bias or prejudice may move for recusal and in such event has the burden of demonstrating objectively that grounds for disqualification actually exist." *JWL Invs., Inc. v. Guilford County Bd. of Adjust.,* 133 N.C. App. 426, 430, 515 S.E.2d 715, 718 (1999) (citation and quotation marks omitted), *disc. review denied,* 351 N.C. 357, 540 S.E.2d 349 (1999). Bias has been defined as

> a predisposition to decide a cause or an issue in a certain way, which does not leave the mind perfectly open to conviction. Bias can refer to preconceptions about facts, policy or law; a person, group or object; or a personal interest in the outcome of some determination. However, in order to prove bias, it must be shown that the decision-maker has made some sort of commitment, due to bias, to decide the case in a particular way.

*Smith v. Richmond County Bd. of Education,* 150 N.C. App. 291, 299, 563 S.E.2d 258, 265-66 (2002) (citation and quotation marks omitted), *disc. review denied,* 356 N.C. 678, —— S.E.2d —— (2003). There is a critical distinction between disqualifying bias against a particular party and permissible pre-hearing knowledge about the party's case. *Farber v. North Carolina Psychology Board,* 153 N.C. App. 1, 9, 569 S.E.2d 287, 294 (2002), *cert. denied,* 356 N.C. 612, 574 S.E.2d 679 (2003). The mere fact that a decision-maker enters a hearing with knowledge of the subject matter does not necessarily lead to the conclusion that the decision-maker is close-minded to the evidence and set as to the final decision. *In re Application of the City of Raleigh,* 107 N.C. App. 505, 514, 421 S.E.2d 179, 184 (1992). In *Smith,* we noted that

> Our Supreme Court has recognized that prior knowledge and discussion of the facts related to a given adjudicatory hearing are inevitable aspects of the multi-faceted roles which Board members play. As long as Board members are able to set aside their prior knowledge and preconceptions concerning the matters at issue, and to base their considerations solely upon the evidence presented during the hearing, constitutionally impermissible bias does not exist.

*Smith,* 150 N.C. App. at 299, 563 S.E.2d at 266 (citation and quotation marks omitted).

**IN RE N. WILKESBORO SPEEDWAY, INC.**

[158 N.C. App. 669 (2003)]

Here, taxpayer refers to certain questions posed and comments made by Commissioner Absher during the hearing. After a thorough review, we are persuaded that the record as a whole shows no impermissible bias on the part of Commissioner Absher, or on the part of any of the other commissioners. We note that all of the commissioners repeatedly asked questions throughout both sessions of the hearing in a diligent attempt to understand the facts and opinions being presented to them. This assignment of error is without merit and is overruled.

## Cross-Appeal

[3] The County has filed a cross-appeal assigning as error the Commission's denial of its motion to dismiss made at the close of taxpayer's evidence. Specifically, the County argues that the appeal before the Commission should have been dismissed because taxpayer failed to carry its burden of showing that the County employed an arbitrary or illegal method of appraising the Property, that a reappraisal of the Property for the year 1999 was not permitted under G.S. § 105-287, and that the County misapplied its schedule of values in reappraising the Property. We disagree.

Although the North Carolina Administrative Code specifically states that Rules of Civil Procedure "do not strictly apply to proceedings before the Commission," *see* 17 N.C.A.C. 11.0209 (2002), our courts have long held that, by presenting evidence, a party waives its right to appeal the denial of a motion to dismiss. *Hamilton v. Hamilton*, 93 N.C. App. 639, 642, 379 S.E.2d 93, 94 (1989) (citing 9 C. Wright & A. Miller, Federal Practice and Procedure, sec. 237, p. 221 (1971)). Those provisions of the Administrative Code that do apply, however, do not set forth a procedure for motions in general, or motions to dismiss in particular. Thus, we are left to analogize. We see no reason to depart from the usual approach here, even though the Rules of Civil Procedure do not apply, because by analogy, the same principles of sound trial management do.

Here, the County moved to dismiss taxpayer's appeal at the close of taxpayer's evidence. The Commission denied the motion, and the County proceeded to present evidence. Thus, we agree that the County has waived its right to appeal the denial of its motion to dismiss.

Even if we were to conclude that the County did not waive its right to appeal the denial of its motion, the Commission has broad

GUERRERO v. BRODIE CONTRS., INC.

[158 N.C. App. 678 (2003)]

discretionary power to examine documents and witnesses. G.S. § 105-290 provides that "Upon its own motion or upon the request of any party to an appeal, the Property Tax Commission . . . shall examine witnesses under oath . . ., and examine the documents of any person if there is ground for believing that information contained in such documents is pertinent to the decision of any appeal pending before the Commission, regardless of whether such person is a party to the proceeding before the Commission." G.S. § 105-290(d) (2001). The Commission was, thus, empowered to hear the testimony of the County's tax supervisor and independent appraiser, as well as examine any documents they may have compiled or relied upon in forming their opinions.

Affirmed.

Judges McGEE and STEELMAN concur.