ANDREA ANDERSON, Plaintiff v. JOHN ESTON LACKEY, III, and BARBARA LACKEY as Guardian Ad Litem for JOHN ESTON LACKEY, III, Defendants

No. COA02-1650

(Filed 16 March 2004)

**1. Appeal and Error— preservation of issues—failure to assign error in record**

Although plaintiff mother contends an April 2002 child custody modification order included findings of fact not based on competent evidence and conclusions of law unsupported by the findings of fact, this argument is dismissed as to those arguments for which plaintiff failed to assign error in the record, N.C. R. App. P. 10(a).

**2. Child Support, Custody, and Visitation— child custody— modification—findings of fact—unsupervised visits**

The trial court's finding in a child custody modification action that the visits between defendant father and his minor child were no longer required to be supervised was supported by competent evidence because: (1) the record contains statements by defendant regarding his devotion to his child and defendant's constant attempts to seek regular contact with the minor child since the start of these proceedings in 1991; (2) the record contains testimony by the clinical supervisor of the treatment team appointed by the trial court who stated that the minor child would benefit from maintaining a relationship with defendant; (3) a psychiatrist concluded that the minor child would benefit from a relationship with defendant; and (4) the trial court made uncontested findings of fact that the minor child has not suffered any abuse at the hands of defendant and that defendant has at all times cooperated fully with the orders of the court.

**3. Child Support, Custody, and Visitation— child custody— modification—fit and proper person for visitation**

The trial court did not err in a child custody modification action by drawing the conclusion of law that defendant father is a fit and proper person to have visitation with his son, because the conclusion is supported by the findings of fact.

**4. Child Support, Custody, and Visitation— child custody— modification—substantial change in circumstances—temporary order**

The trial court did not err by modifying a child custody order without first finding a substantial change in circumstances, because: (1) if a child custody order is temporary in nature and the matter is again set for hearing, the trial court is to determine custody using the best interests of the child without requiring either party to show a substantial change of circumstances; (2) defendant was not required to show a substantial change in circumstances based on the language in the 6 January 1999 order referencing a specific reconvening time and the later alteration and rehearing within 20 months of the 6 January 1999 order; and (3) a twenty-month delay between a temporary order and a request for modification does not alter the temporary status of the order if the parties were negotiating a new arrangement during that time.

**5. Child Support, Custody, and Visitation— child custody— modification—notice—possible visitation changes**

Although plaintiff mother contends the trial court erred in a child custody modification action by allegedly failing to provide plaintiff mother with proper notice that the hearing held on 20 March 2002 would include changes to the visitation schedule, this assignment of error is dismissed because plaintiff was adequately apprised of the pendency of an altered visitation schedule which afforded her an opportunity to present her objections in light of defendant's complaint and the opening statements by the court on the day of the hearing.

**6. Trials— trial court's pre-existing bias—prejudgment of case**

Plaintiff mother failed to show in a child custody modification action a pre-existing bias against her or a prejudging of her case based on the trial court's comments on the evidence presented before it in a nonjury trial, because: (1) the trial court found as fact that plaintiff has failed to comply with orders of the court; and (2) the trial court's role is to determine what is in the best interest of the child, and the trial court stated its focus was on the child.

ANDERSON v. LACKEY

[163 N.C. App. 246 (2004)]

Appeal by plaintiff from order entered 18 April 2002 by Judge Jane V. Harper in Mecklenburg County Superior Court. Heard in the Court of Appeals 28 October 2003.

*Andrea Anderson for plaintiff-appellant.*

*Michael Schmidt for minor child-appellant.*

*No brief filed for defendant-appellee.*

TIMMONS-GOODSON, Judge.

Andrea Anderson ("plaintiff") appeals from an order of the trial court granting unsupervised visitation by John Lackey ("defendant") with his minor child, John Colby Lackey ("Colby"). For the reasons stated herein, we affirm the order of the trial court.

The pertinent facts of the instant appeal are as follows: Plaintiff and defendant were married on or about 6 July 1985. Colby was born of the union on 19 March 1988. Plaintiff and defendant separated on or about 28 April 1991, following a horseback-riding accident that caused serious head injuries to defendant.

On 21 August 1991, defendant was declared incompetent by the Clerk of Superior Court for Mecklenburg County and plaintiff was appointed as guardian of defendant's estate. Defendant's mother was substituted as guardian of defendant's estate in November 1991. On 27 January 1992, defendant's competency was partially restored by the court.

In June 1992, plaintiff filed a complaint against defendant for custody of Colby, child support, alimony, and equitable distribution of marital assets. Defendant filed an Answer and Counterclaim seeking visitation with Colby, a divorce from bed and board, and equitable distribution of marital assets. On 23 December 1992, plaintiff and defendant entered into a Consent Order whereby defendant agreed to pay child support and the parties agreed to mediate issues of child custody and visitation.

The trial court entered an Order Adopting Parenting Agreement on 18 June 1993, which incorporated a temporary parenting agreement between the parties stating that "the [parties] will work together cooperatively to insure that adequate time is provided for Colby and [defendant]." The parties revised their agreement two times thereafter, providing for altered supervised visitation schedules between defendant and Colby. The last revision included the statement that

ANDERSON v. LACKEY

[163 N.C. App. 246 (2004)]

defendant "is interested in moving to unsupervised time with Colby, [and that] the [parties] have agreed that any changes to this schedule will be at the recommendation of [a therapist] who has been working with Colby."

On 11 February 1997, plaintiff moved to modify the order for child support because of change of circumstances. On 9 April 1997, defendant moved to establish a specific schedule for regular, frequent, and unsupervised visitation with Colby and to order psychological evaluations of both parties and Colby. On 2 December 1997, the trial court ordered the evaluation of the parties and Colby and found as fact that defendant had not been permitted to visit with Colby at the agreed upon times listed in the 12 September 1995 consent order and that although defendant desired unsupervised visits with Colby, defendant had been told that Colby was afraid of him. Defendant therefore requested psychological evaluations as to what visitation was in Colby's best interests.

On 6 January 1999, the trial court entered a Consent Order On Custody And Visitation. The parties requested the entry of this order, which was entered into freely and voluntarily. The Consent Order On Custody and Visitation provided defendant with supervised visitation at the Family Center/Connections Program ("Program") facility which could be increased at the direction of the Program. The 6 January 1999 order further allowed that visitation could become unsupervised if the Program, guardian *ad litem*, and the parties agreed. If any party did not agree to unsupervised visitation, the Court could review the matter. Prior to any unsupervised visitation, defendant was to supply proof to the Program and the guardian *ad litem* that he was physically and mentally able to care for Colby. The Consent Order On Custody And Visitation included a date of review of the order to "determine whether the custody and visitation issues need[ed] to be revised in any way."

The trial court entered a 30 October 2000 order which found that the 6 January 1999 Consent Order had not been implemented as required by the Court. The trial court included additional provisions that Colby was to attend all scheduled visits with defendant and that plaintiff was to ensure that Colby attended the scheduled visitations with defendant. The trial court reviewed this matter on 30 January 2001 and found that the visitation and additional provisions of the 30 October 2000 order continued to be in Colby's best interests.

ANDERSON v. LACKEY

[163 N.C. App. 246 (2004)]

Defendant filed a Motion For Contempt And Motion For Judicial Assistance on 20 December 2001, requesting that the court hold plaintiff in contempt for her failure to comply with the provisions of the prior orders entered in this matter. After a hearing, the trial court entered an order titled "Order Setting Visitation and Closing the Case" on 18 April 2002. The court made the following uncontested findings of fact therein:

1. This case has been pending since June 1999. . . . [Plaintiff's] complaint for custody . . . does not allege any type of physical abuse of herself or Colby. It does allege indignities. . . . The court has never heard evidence about these allegations, or found any of them to be true.

. . . .

5. . . . Counsel is referred to the court's order of December 15, 1998, and especially to its findings regarding mother's noncooperation with the [psychologists], and later with aspects of Dr. Pleas Geyer's evaluations. . . .

6. Since November 1998, Dr. Geyer has stressed the importance of Colby having contact with his father, for Colby's benefit. . . . The consent order, entered in January 1999, provided, inter alia, for visitation on alternate weeks at Connections . . . .

7. In February 2000 the case was scheduled for another hearing. By consent order, the parties reserved the right to challenge private school expenses, as had happened in previous orders.

8. Dr. Warren's September 14, 2000 letter to the court is instructive. . . . [Plaintiff's] lack of cooperation, and delays; its statement, "Clearly the current plan is not working"; and its report, based on Irv Edelstein's information, that "Irv did not perceive Colby to be fearful of contact with her[sic] father" and "Colby was adamant that he would no longer have anything to do with [defendant], and would not participate today, or in any future sessions we may schedule."

. . . .

13. [Defendant] has at all times cooperated fully with the court'[sic] directives.

. . . .

16. [Plaintiff] and Colby continue to believe that [defendant] molested Colby at some point in the distant past. The court has

never found this to be true, nor does the court find it to be true now. [Plaintiff] and Colby also believe that Colby should have no contact with [defendant]. . . . The court is not convinced that any therapist would [change plaintiff's views on these subjects], and therefore sees no point in continuing to monitor [plaintiff's] therapy.

. . . .

18. The court agrees with Dr. Geyer that Colby will benefit by [plaintiff] taking an ambivalent stance in favor of normal visits [with defendant] . . .

The trial court thereafter concluded that it was in Colby's best interest to have unsupervised visits with defendant and ordered same. From this order, plaintiff appeals.

Plaintiff argues that the trial court erred by (1) issuing an order where the findings of fact are not supported by competent evidence and do not support the court's conclusions of law; (2) modifying a prior custody order without finding a substantial change in circumstances; (3) issuing an order without proper notice to the parties; and, (4) issuing an order based on the court's bias against plaintiff.

[1] In her first assignment of error, plaintiff argues that the April 2002 order included findings of fact not based on competent evidence and conclusions of law unsupported by the findings of fact. While plaintiff asserts in her brief that the first, fourth, sixth, eighth, tenth, fifteenth, sixteenth, and eighteenth findings of fact are not supported by competent evidence in the record, she has failed to assign error to said findings in the record. Thus, plaintiff has not properly preserved these arguments for appellate review. "The scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal." N.C. R. App. P. 10(a) (2003). Plaintiff's arguments as to these findings of fact are overruled.

"When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence." *Shipman v. Shipman*, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003). Substantial evidence has been defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at

474, 586 S.E.2d at 253 (quoting *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)).

> Our trial courts are vested with broad discretion in child custody matters. This discretion is based upon the trial courts' opportunity to see the parties; to hear the witnesses; and to " 'detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges.' " Accordingly, should we conclude that there is substantial evidence in the record to support the trial court's findings of fact, such findings are conclusive on appeal, even if record evidence " 'might sustain findings to the contrary.' "

*Id.* at 474-75, 586 S.E.2d at 253-54 (internal citations omitted).

[2] Plaintiff argues that finding of fact number 17 is not supported by competent evidence in the record. Finding of fact number 17 asserts the following:

> The Court sees no need for Colby's contact with his father to be supervised, either by a mental health professional or by a lay person. Colby is not afraid of his father, and his father poses no danger to him. Colby will benefit by frequent, unsupervised contact with his father. Dr. Geyer's reason for having such contact supervised by a law person—to provide a report to the court—will no longer apply, as the court does not intend to schedule further reviews.

The record contains statements by defendant regarding his devotion to Colby and defendant's constant attempts to seek regular contact with Colby since the start of these proceedings in 1991. The record also includes testimony by Dr. Warren, the clinical supervisor of the treatment team appointed by the trial court, stating that Colby would benefit from maintaining a relationship with defendant. Dr. Geyer, a psychiatrist appointed by the court to conduct a psychiatric evaluation of plaintiff, defendant, and Colby, also concluded that Colby would benefit from a relationship with defendant. Furthermore, the trial court made uncontested findings of fact that Colby has not suffered any abuse at the hands of defendant and that defendant has at all times cooperated fully with the orders of the court. Thus, there is substantial evidence in the record to support the trial court's finding of fact number 17.

[3] Plaintiff next argues that the trial court's conclusion of law that defendant is a fit and proper person to have visitation with his son is

not supported by the findings of fact. For the reasons addressed above, the trial court's conclusion of law that defendant is a fit and proper person to have visitation with Colby is supported by the findings of fact. This assignment of error is overruled.

**[4]** Plaintiff next argues that the trial court erred in modifying a child custody order without first finding a substantial change in circumstances. Plaintiff contends that the trial court should have considered the January 1999 order to be a permanent order and required defendant to show a substantial change of circumstances pursuant to N.C. Gen. Stat. § 50-13.7(a) (2003). We disagree.

"Once the custody of a minor child is determined by a court, that order cannot be altered until it is determined (1) that there has been a substantial change in circumstances affecting the welfare of the child and (2) a change in custody is in the best interest of the child." *Evans v. Evans*, 138 N.C. App. 135, 139, 530 S.E.2d 576, 578-79 (2000) (citations omitted). The party seeking modification of the child custody order bears the burden of proving the existence of a substantial change in circumstances affecting the welfare of the child. *Id.*

"If a child custody order is temporary in nature and the matter is again set for hearing, the trial court is to determine custody using the best interests of the child test without requiring either party to show a substantial change of circumstances." *LaValley v. LaValley*, 151 N.C. App. 290, 292, 564 S.E.2d 913, 915 (2002). An order is considered temporary if "it either (1) states a 'clear and specific reconvening time' that is reasonably close in proximity to the date of the order; or (2) does not determine all the issues pertinent to the custody or visitation determination." *Simmons v. Arriola*, —— N.C. App. ——, ——, 586 S.E.2d 809, 811 (2003) (quoting *Brewer v. Brewer*, 139 N.C. App. 222, 228, 533 S.E.2d 541, 546 (2000)).

The parties voluntarily entered into a Consent Order on Custody and Visitation on 6 January 1999, which included a "clear and specific reconvening time" to determine whether the parties had complied with the Order. The Order stated:

This matter shall be reviewed by the Court in the May, [sic] 17, 1999 through June 11, 1999 calendar to determine the quality of the parties compliance with this Order, the communications with the Clinical Supervisor, the quality of the interaction between the Defendant and Colby, as well as the Plaintiff and Colby and deter-

mine whether the custody and visitation issues need to be revised in any way.

In the 18 April 2002 Order being appealed from herein, the trial court enters several findings of fact that establish the procedural history pertinent to this case.

> 6. Since November 1998, Dr. Geyer has stressed the importance of Colby having contact with his father, for Colby's benefit. . . . The consent order, entered in January 1999, provided, inter alia, for visitation on alternate weeks at Connections, . . . In May 1999 Dr. William Warren was substituted as clinical supervisor; at some point the Connections order was modified, and Irv Edelstein was appointed to supervise the visits.

> 7. In February 2000 the case was scheduled for another hearing. By consent order, the parties reserved the right to challenge private school expenses, as had happened in previous orders.

> 8. Dr. Warren's September 14, 2000 letter to the court is instructive. . . . [Plaintiff's] lack of cooperation, and delays; its statement, "Clearly the current plan is not working"; and its report, based on Irv Edelstein's information, that "Irv did not perceive Colby to be fearful of contact with her[sic] father" and "Colby was adamant that he would no longer have anything to do with [defendant], and would not participate today, or in any future sessions we may schedule."

> 9. The court reviewed the case September 18, 2000.

Although plaintiff argues that the 6 January 1999 order was a final order, the trial court's later findings of fact clearly establish that between the 6 January 1999 order and the September 2000 hearing, the trial court had modified the 6 January 1999 order prior to another hearing held in February of 2000. Plaintiff argues that if this Court finds that the 6 January 1999 order is a temporary order, the twenty month delay in requesting a modification of the temporary order changes the status of the order from temporary to permanent. *See Brewer*, 139 N.C. App. 222, 533 S.E.2d 541 (2000). However, this Court recently found that a 20 month delay between a temporary order and a request for modification did not alter the temporary status of the order if the parties were negotiating a new arrangement during this time. *Senner v. Senner*, — N.C. App. —, —, 587 S.E.2d 675, 677 (2003). Due to the clear language in the 6 January 1999 order referencing a specific reconvening time and the later alteration and

rehearing within 20 months of the 6 January 1999 order, defendant was not required to show a substantial change in circumstances and plaintiff's assignment of error is overruled. *See LaValley*, 151 N.C. App. at 292, 564 S.E.2d at 915.

**[5]** Plaintiff's third assignment of error asserts that the court failed to provide her proper notice that the hearing held on 20 March 2002 would include changes to the visitation schedule. N.C. Gen. Stat. § 50A-205 provides that notice and an opportunity to be heard must be provided to all interested parties before a child custody determination can be made. (2003).

In the case *sub judice*, plaintiff argues that although she received notice of the hearing, she did not receive notice that the hearing would review possible visitation changes. This Court said in *Clayton v. Clayton* that N.C. Gen. Stat. § 50-13.5(d)(1) "is designed to give the parties to a custody action adequate notice in order to insure a fair hearing." 54 N.C. App. 612, 614, 284 S.E.2d 125, 127 (1981). Adequate notice is defined as " 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Randleman v. Hinshaw*, 267 N.C. 136, 140, 147 S.E.2d 902, 905 (1966) (citations omitted). Furthermore, in *Danielson v. Cummings*, this Court held that no written notice of a motion was required to effectuate adequate notice to the opposing party where the motion was announced in open court. 43 N.C. App. 546, 547, 259 S.E.2d 332, 333 (1979), *judgment aff'd*, 300 N.C. 175, 265 S.E.2d 161 (1980).

In the appeal herein, defendant's Motion For Contempt And Motion For Judicial Assistance states that "defendant hereby moves the Court . . . for an order finding and holding Plaintiff in civil contempt of Court for her disobedience and failure to comply with the provisions of prior orders entered in this case." At the beginning of the 20 March 2002 hearing, the trial court stated that the hearing was a "review of the arrangements that the Court has been trying, with a whole lot of assistance, to follow to reacquaint a little boy with his father." The trial court then asked the parties whether there was "anything else that [the court was] supposed to hear in [the] case . . . *other than its review of how things are going as far as the . . . supervised visits*" (emphasis added). The court then asked if there was anything else before it that afternoon. In light of defendant's complaint and the opening statements by the court on the day of the hearing, we conclude that plaintiff was adequately

apprised of the pendency of an altered visitation schedule which afforded her an opportunity to present her objections. *See Randleman*, 267 N.C. at 140, 147 S.E.2d at 905.

**[6]** Plaintiff's fourth assignment of error asserts that the trial court's bias against plaintiff prevented the court from addressing Colby's best interests. Plaintiff directs this Court to a statement made by the trial court during the 20 March 2002 hearing, which is the basis for the 18 April 2002 order. The statement to plaintiff's attorney is as follows: "This has been your client's goal from the beginning, is to insure that [Colby] didn't see his father. That's always been her goal. I have some level of discomfort in saying because things have reached the pass they've reached, she wins. I'm sorry." Plaintiff's counsel then responded: "I'm not suggesting that anybody win. I'm suggesting that we—if you take what has been reported. Let's just look at the child." The court replied: "That's what I've tried to look at all along, was the child." Plaintiff argues that this interchange suggests bias to such a degree that the court could not properly assess what was in Colby's best interests. We disagree.

There is a "presumption of honesty and integrity in those serving as adjudicator." *In re N. Wilkesboro Speedway, Inc.*, 158 N.C. App. 669, 675, 582 S.E.2d 39, 43 (2003) (quoting *Taborn v. Hammonds*, 83 N.C. App. 461, 472, 350 S.E.2d 880, 887 (1986), *appeal after remand*, 91 N.C. App. 302, 371 S.E.2d 736 (1988), *rev'd on other grounds*, 324 N.C. 546, 380 S.E.2d 513 (1989)). "Trial judges are not barred from expressing their opinions in trials conducted without a jury, especially where the comments are consistent with the court's role as finder of fact." *Hancock v. Hancock*, 122 N.C. App. 518, 528, 471 S.E.2d 415, 421 (1996). In *Hancock*, this Court determined that the appellant failed to prove that the judge was biased when he commented on the case and the evidence collected in a non-jury trial. *Id.* In the case herein, the trial judge based her comments on the evidence presented before her, in which she found as fact that plaintiff has failed to comply with orders of the court. Furthermore, as the trial court's role is to determine what is in the best interest of the child, and the judge clearly states that the child is her focus, plaintiff has failed to evidence a pre-existing bias against plaintiff or a prejudging of her case.

Affirmed.

Judges WYNN and ELMORE concur.