ROBERT MITCHELL, Plaintiff v. CHARLENE MITCHELL (now NORWICH),
Defendant

No. COA08-1069

(Filed 1 September 2009)

**1. Child Support, Custody, and Visitation— custody modification—notice of hearing**

A *de novo* review revealed the trial court did not err in entering an order modifying child custody even though defendant contends the hearing supporting the order was held without proper notice to defendant in violation of her state and federal constitutional rights and in violation of the county's local rules.

**2. Child Support, Custody, and Visitation— custody modification—sufficiency of findings of fact—substantial change in circumstances—best interests of child**

The trial court did not err by concluding that plaintiff met his burden of proof on his motion for modification of child custody and by granting the same even though defendant contends plaintiff failed to show a substantial change in circumstances since entry of the permanent custody order, a connection between his alleged changes and the welfare of the children, and that a change in custody would be in the best interests of the child.

**3. Appeal and Error— preservation of issues—failure to raise constitutional issue at trial**

An assignment of error in a child custody modification case is dismissed because defendant failed to raise this constitutional issue at trial and even assuming *arguendo* that defendant preserved a due process issue, the trial court did not violate the local rules or commit any misconduct in the scheduling and hearing of this matter.

**4. Child Support, Custody, and Visitation— custody modification—denial of motion for new trial**

The trial court did not abuse its discretion in a child custody modification case by denying defendant's motion for a new trial under N.C.G.S. § 1A-1, Rule 59.

Appeal by defendant from orders entered 25 October 2007 by Judge Marcia H. Morey, District Court, Durham County; 9 November 2007 by Marcia H. Morey, District Court, Durham County; and 15

MITCHELL v. MITCHELL

[199 N.C. App. 392 (2009)]

January 2008 by Judge Lillian B. Jordan, in District Court, Durham County. Heard in the Court of Appeals 8 April 2009.

*Hayes Hofler, P.A., by R. Hayes Hofler, for plaintiff-appellee.*

*Lewis, Anderson, Phillips & Hinkle, PLLC, by Susan H. Lewis, for defendant-appellant.*

STROUD, Judge.

On 9 November 2007, the trial court entered an order modifying custody, and on 15 January 2008, the trial court denied defendant's motion for a new trial. Defendant appeals from both orders. For the following reasons, we affirm.

## I. Background

This case arises from a protracted and highly contentious custody dispute which began in December 2003. Both parties have filed numerous documents during the nearly four years of litigation leading up to the custody modification order which is at issue here. Due to the many motions, responses, and hearings over the years, the procedural history of this case is quite complex. We will therefore summarize only the facts which we deem pertinent to this appeal.

On 9 December 2003, plaintiff filed a complaint against defendant alleging that on 4 December 2003, he and defendant had separated after approximately eight years of marriage. Plaintiff's complaint requested, *inter alia,* temporary and permanent custody of plaintiff and defendant's two minor children or in the alternative, that the court grant plaintiff and defendant, joint custody of the children. On 18 December 2003, defendant filed her answer to plaintiff's complaint and a counterclaim requesting the trial court grant her temporary and permanent custody of the parties' minor children.

On 5 February 2004, Judge Morey entered the first temporary custody order. Due to the "high level of conflict" between the parties, on 29 March 2004, a consent order was entered appointing Dr. Betty Phillips as parenting coordinator. On 1 July 2004, Wendy Sotolongo was appointed as guardian *ad litem* "to represent the best interests of the children." By a 4 May 2005 consent order, the parties consented for Dr. Ginger Calloway to conduct a forensic psychological evaluation and custody evaluation. In July 2005, Judge Morey held a five-day hearing regarding custody and entered a continued temporary custody order on 26 July 2005; at the 26 July 2005 hearing, the

trial court also heard plaintiff's motion to remove the parenting coordinator, Dr. Phillips.

On 9 August 2006, a hearing was held before Judge Morey as to permanent custody. In October of 2005, Dr. Calloway took over as the parenting coordinator. On 10 October 2006, the trial court entered a *permanent* custody order ("2006 custody order") granting primary physical custody to defendant with specific visitation privileges to plaintiff. Plaintiff's visitation schedule was as follows:

a. [Daughter]

    i. So as to reduce contact between the parents, Plaintiff's visitation with [daughter] will be every other weekend from Friday at the end of after school care at 5:30PM until return to school on Monday morning between 8:00AM and 8:15AM. The Sunday overnight shall not commence until [daughter] has adjusted to school in the opinion of the Parent Coordinator.

    ii. On the weeks in which the Plaintiff does not have weekend visitation with [daughter] he shall have a Thursday visit beginning after her preschool lets out for the day at 2:45PM until 5:00PM Plaintiff will return [daughter] to the Defendant at Duke School at 5:00PM and then immediately depart from the school.

    iii. The visitation schedule outlined above for the minor child [daughter] shall begin after one month after the beginning of school or when determined appropriate by the Parent Coordinator, which ever occurs later. Pending the commencement of this schedule, [daughter] shall visit with the Plaintiff every other weekend from Friday at 5:00PM until Sunday night at 5:00PM when [daughter] shall be returned to the Defendant.

b. [Son]

    i. Plaintiff's visitation with [son] will remain the same. Said schedule is every other weekend from Wednesday after school until return to school on Monday morning between 8:00AM and 8:15AM. [Son] shall be allowed to remain at after school care until 5:30PM on each of the days he is enrolled in said care unless otherwise designated by the Parent Coordinator. In the event that [son] does not have

> school or is not in school for any reason on the Wednesday beginning the Plaintiff's visitation, the specific pick up/drop off arrangements shall be worked out by the Parenting Coordinator.

Furthermore,

> Holidays, school break, and summer vacation visits shall continue to be scheduled through the Parent Coordinator and pursuant to the parenting agreement. Until [daughter] is older she should not be away from the Defendant for holiday, school break, or summer vacation visits for more than four (4) consecutive overnights. . . .

The 2006 custody order also granted defendant sole legal custody of the children, except in cases of (1) medical attention, (2) access to the children's medical providers, medical records, educational providers, and educational records, and (3) extracurricular activities and sports, wherein both parents would have equal access and would share in decision-making authority. Dr. Calloway was ordered to continue as parenting coordinator.

After entry of the 2006 custody order, the counsel for each party withdrew and each party obtained new counsel. In January 2007, Dr. Calloway resigned as parenting coordinator. On 19 February 2007 defendant filed a motion for contempt against plaintiff.

On 7 May 2007, plaintiff filed a motion seeking "summer vacation time" with his children. On 10 May 2007, defendant filed a response to plaintiff's visitation motion. On 29 June 2007, the trial court filed an order granting plaintiff's request for "summer vacation time[.]"

On 25 June 2007, plaintiff filed a motion for relief from judgment pursuant to Rule 60 ("Rule 60 motion") seeking to set aside the 2006 custody order. In her motion for recusal of Judge Morey, filed on 23 July 2007, defendant characterized the Rule 60 motion as "attacking" the 2006 custody order "on the grounds that the Court acted without statutory and constitutional authority in entering said Order." The recusal motion went on to allege that "[p]laintiff's current attorney of record, Hayes Hofler, has threatened to sue the Hon. Marcia Morey in federal court." On 2 August 2007, defendant filed a second motion for contempt against plaintiff, alleging that plaintiff "has continued and escalated his campaign against the Children's therapists." On 25 September 2007, the trial court prohibited defendant from taking the deposition of Alyscia Ellis, plaintiff's former attorney.

On 28 September 2007, plaintiff filed a motion for modification of the 2006 custody order requesting, *inter alia,* "joint legal custody on a temporary and permanent basis" and "equal custodial time with his children on a temporary and permanent basis[.]" On 28 September 2007, plaintiff's attorney mailed defendant's attorney a notice of hearing for 25 October 2007 regarding the motion to modify custody, and on 1 October 2007, the notice of hearing was filed. Defendant responded to plaintiff's motion and the notice of hearing for 25 October 2007 by filing various documents relevant to this appeal. On 9 November 2007, based upon plaintiff's motion to modify custody, the trial court ordered, *inter alia,* the following:

1. The parties are hereby granted joint legal custody of the minor children; however because of the high conflict that has existed between the parties, joint legal custody shall be clarified by the following:

   a. The parties must both agree if there is to be any change from the children's current school placement or from their current therapeutic treatment. If one parent proposes a change from the current situation that the other parent does not agree to, the parties must consult with the Parent Coordinator.

   b. Each parent may make legal decisions regarding emergency medical/dental treatment, but must consult with each other regarding non-emergency procedures.

   c. For the next twenty-four months, the mother shall have primary decision making over [daughter]'s extracurricular activities; and the father shall have primary decision making over [son]'s extracurricular activities. All decisions shall be made in the children's best interests.

2. The parties will share physical custody of the children as follows:

   a. Beginning the first week of December 2007, [t]he father shall have physical custody of both children every other weekend from Thursday after school until Monday morning. Additionally, on alternate weeks, the father shall have [son] overnight on Wednesday and Thursday and [daughter] on Wednesday nights. Transitions are to occur at the same times and places and in the same manner as heretofore ordered, until the parent coordinator works out a more

MITCHELL v. MITCHELL

[199 N.C. App. 392 (2009)]

exact schedule which will transition custody to an equal 50/50 basis by the first week of March, 2008.

b. Beginning in the first week of March, the parties shall share physical custody equally in a schedule that is known as 2-2-3. Two days with plaintiff, two days with defendant, three days with plaintiff, then alternating. Extended summer holidays with each parent shall be afforded equally.

. . . .

On 19 November 2007, defendant filed a motion for a new trial and stay of the 9 November 2007 order. On 15 January 2008, the trial court entered an order denying defendant's motions for a new trial and to stay the 9 November 2007 order. From the 9 November 2007 order modifying custody and 15 January 2008 order denying defendant's motion for a new trial, defendant appeals.[1]

## II. Notice

[1] Defendant first contends that "the trial court committed reversible error in entering its 9 November 2007 order because the hearing supporting the order was held without proper notice to defendant in violation of her state and federal constitutional rights and in violation of the Local Rules." (Original in all caps.) We disagree and first note that defendant failed to make an argument regarding "her state and federal constitutional rights" to the trial court, and thus any issues regarding these contentions are waived. See N.C.R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context."); see also State v. Cumber, 280 N.C. 127, 131-32, 185 S.E.2d 141, 144 (1971) ("Appellate courts will not ordinarily pass upon a constitutional question unless it affirmatively appears that such question was raised and passed upon in the trial court." (citation omitted)).

As to her right to notice, defendant argues she

was not provided adequate notice of the 25 October 2007 hearing. Although Defendant received a purported Notice of Hearing, she

---

1. Defendant's notice of appeal also notes defendant is appealing from a 25 September 2007 order, but as defendant has not challenged this order in her brief, we deem any appeals regarding this order abandoned. See N.C.R. App. P. 28(a) ("Review is limited to questions so presented in the several briefs. Questions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief, are deemed abandoned.")

later received the official court calendar for 25 October 2007 showing the matter on for pretrial only. Defendant took all reasonable steps to challenge the purported Notice of Hearing, including filing a Motion to Strike, and strenuously objecting at the hearing.

Thus, defendant contends she did not receive adequate notice that the modification for custody hearing would be held on 25 October 2007 as the "official court calendar" provided for only a "pretrial" hearing.

A. Adequacy of Notice

"Whether a party has adequate notice is a question of law, which we review *de novo*." *Swanson v. Herschel*, 174 N.C. App. 803, 805, 622 S.E.2d 159, 160 (2005). "N.C. Gen. Stat. § 50A-205 provides that notice and an opportunity to be heard must be provided to all interested parties before a child custody determination can be made." *Anderson v. Lackey*, 163 N.C. App. 246, 255, 593 S.E.2d 87, 92 (2004).

Defendant first directs our attention to *Scruggs v. Chavis* wherein "the record include[d] two dates for the hearing of defendants' motion[,]" 29 April 2002 on the notice of hearing and 6 May 2002 on the court calendar, and the confusion resulted in the plaintiff's counsel failing to appear. 160 N.C. App. 246, 247-48, 584 S.E.2d 879, 880 (2003). However, here, 25 October 2007 was the date on both the notice of hearing and court calendar and plaintiff's counsel did actually appear. Thus, we deem *Anderson* to be more apposite to this case. *See Anderson* at 255, 593 S.E.2d at 92. In *Anderson*, the plaintiff argued she received notice of the hearing, but "did not receive notice that the hearing would review possible visitation changes." *Id.*

This Court stated in *Anderson*,

Adequate notice is defined as notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Furthermore, in *Danielson v. Cummings*, this Court held that no written notice of a motion was required to effectuate adequate notice to the opposing party where the motion was announced in open court.

*Id.* (citations and quotation marks omitted). This Court went on to analyze the dialogue during the hearing and concluded "that plaintiff was adequately apprised of the pendency of an altered visitation

schedule which afforded her an opportunity to present her objections." *Id.* at 255-56, 593 S.E.2d at 93.

Here, the record shows that plaintiff's counsel mailed plaintiff's motion for modification and notice of hearing for the 25 October 2007 hearing on 28 September 2007, almost one full month before the hearing was held. Furthermore, though the relevant court calendar showing a hearing regarding plaintiff's motion to modify custody did erroneously note that the hearing was "P/T," i.e., pretrial, it also noted that the hearing was scheduled for "1 Day[;]" the time estimate of one day should have put defendant on further notice that something more than a pretrial conference was scheduled, as pretrial matters are rarely, if ever, scheduled for an entire day of court.

In response to plaintiff's motion to modify, defendant filed a reply, two motions to strike, a motion for sanctions, a motion to dismiss, and at least seventeen exhibits. Defendant's numerous responses to the motion to modify custody indicate that she was well aware that the custody matter was scheduled for hearing on 25 October 2007 and that she strongly objected to holding the hearing on that date. For example, in her motion to strike the notice of hearing, defendant alleges that Family Court Rules ("Local Rules") require a pretrial conference and that the trial date is to be set at the pretrial conference. Defendant also alleged that the Local Rules required custody mediation prior to trial and that mediation had not been done. Defendant contended that the only matter properly before the court on 25 October 2007 was a pretrial conference, and defendant requested that the trial court strike the notice of hearing and sanction plaintiff for failure to follow the Local Rules. Defendant's motion to strike clearly demonstrates that defendant was aware that a modification of custody hearing was scheduled to be heard on 25 October 2007; though defendant objected to having the hearing on 25 October 2007 on several grounds, she cannot now claim she was unaware that the motion to modify was actually scheduled for hearing as the knowledge that a hearing was scheduled for that day is the premise of her motion to strike.

At the actual hearing regarding modification of the custody order, the trial court heard extensive arguments regarding defendant's various pretrial motions.[2] One primary dispute between counsel for both

---

2. As (1) there were a number of pending motions, including two contempt motions and plaintiff's Rule 60 motion, (2) various dates had been set and then evidently continued or rescheduled on various occasions, and (3) the record does not con-

MITCHELL v. MITCHELL

[199 N.C. App. 392 (2009)]

parties appeared to be whether a hearing on the plaintiff's Rule 60 motion to set aside the 2006 custody order would be held before the hearing on modification, with defendant strongly arguing that the Rule 60 motion should be heard first.[3] Furthermore, it appears that defendant's counsel had previously, prior to the hearing date, asked the court to continue the 25 October 2007 hearing on the motion to modify and that the trial court had denied the motion to continue:

> MR. HOFLER [plaintiff's counsel]: I want to proceed on the Motion to Modify.

> THE COURT: Okay.

> MR. HOFLER: But, Your Honor, would recall that we left the Rule 60 Motion to be a separate hearing. You know, originally, it was scheduled for the Monday, and then—and then it was continued.

> You asked us to pick dates or you conferred with Mandy about dates about the Rule 60 Motion. She said the October 25 [sic] and, I think, November the 19th.

> And then we had earlier decided that the other motions, that all of these pending motions, would be heard after the Rule 60 Motion.

> So, as far as I an concerned, none of those motions are for hearing today, including the Rule 60 Motion.

> But the reason I proceeded the way I have is because it was evident to me that Ms. Lewis was going to do all she could to delay hearing a Rule 60 Motion. And, albeit, I was—I acceded to her desire to come down and talk to you about continuing, you had denied a continuance on that. I thought it was continued on the basis that that would give her time to do the deposition [of Alyscia Ellis] that she wanted to do.

> . . . .

> As it turns out, of course, there have been a slew of motions now filed. *If Your Honor recalls though, you denied the Motion— Your Honor, you denied the Motion to Continue the hearing on modification of custody, you denied that motion.*

tain relevant documents on several of these matters, it is difficult for us to discern exactly which motion counsel and the trial court are addressing.

3. Ultimately, the Rule 60 motion was heard immediately before the motion to modify. The Rule 60 motion was denied and is not at issue in this appeal.

*Since you denied that motion and this hearing was set for trial, you denied their Motion to continue the modification hearing.*

Then there have been all of these additional motions that were filed on the 23red [sic] and on the 17th.

So our position is that the Rule 60 Motion is still pending, it has not been set for hearing. Ms. Lewis has given notice that she is not available in November. So the only way we could get this case heard about the welfare of the children before your term is up is to have this hearing today. And it's duly set, duly noticed, and so we're ready to proceed on that motion.

(Emphasis added). In responding to plaintiff's counsel's remarks, defendant's counsel noted that plaintiff's counsel "had misstated the facts" and that he was "riding roughshod over the local Rules." Furthermore, in response to some confusion as to which motion defendant's counsel was talking about, the trial court noted, "*The Motion to Continue today's hearing was denied.* Everyone should . . ." (Emphasis added.) Defendant's counsel interrupted, noting, "*I'm not talking about today's Motion, I'm talking about what he just said about the Rule 60 Motion.*" (Emphasis added.) Thus, one thing which seems to be clear from the dialogue at the modification hearing is that prior to 25 October 2007 defendant had made a motion to continue the hearing regarding the motion to modify, and the trial court had denied that motion.

Defendant's actions also indicate that she was *aware* the motion to modify custody would be heard on 25 October 2007 as defendant, her counsel, and witnesses were actually present at the modification hearing, and defendant was prepared to and did present testimony and twenty-two exhibits at the hearing. Considering the extensive motions and documents filed by defendant between the defendant's receipt of the notice of hearing and the hearing itself, the dialogue at the modification hearing, and defendant's actions, show that defendant knew or should have known that the trial court was going to hear the motion to modify custody on 25 October 2007. The record establishes that defendant was "apprise[d] . . . of the pendency of the action and afford[ed] . . . an opportunity to present [her] objections." *Id.* at 255, 593 S.E.2d at 92. We thus conclude that defendant received adequate notice of the hearing on the motion to modify custody.

B.  Local Rules

Although defendant did have notice that the motion to modify custody was scheduled to be heard on 25 October 2007, she also contends that the court should not have heard the matter because it was scheduled in violation of the Durham County Local Rules. She argues that she

> was also entitled to rely on the court to enforce additional provisions of the Local Rules under which Plaintiff's Motion was not properly before the court. The Local Rules in effect at the time of this hearing specifically provide that pretrial conferences are required and shall be set. . . . The Local Rules also require mandatory custody mediation in all custody cases, including motions for modification, prior to any pretrial. . . . The Local Rules provide for sanctions for failure to comply, including dismissal of the claim and monetary fines. . . .
>
>      . . . .
>
> In objecting to the hearing, Defendant sought enforcement of the plain terms of the Local Rules. The court failed to enforce them and sought to excuse that failure by waiving application of the same.

(Quotation marks omitted.)

In its order modifying custody the trial court found in finding of fact 22:

> Over objection from defendant's counsel, the court waived the local rules for any further pretrial or mediation, as there have been more than twenty scheduled hearings and continuances, all pertaining to custody issues, since this case was filed in 2003. Further, as the presiding judge, who has heard this case from its inception, will no longer be in the Family Court rotation, the Court believed it was in the best interests of the minor children to proceed and hear evidence on the plaintiff's Motion to Modify Custody.

Local rules "are rules of court which are adopted to promote the effective administration of justice by insuring efficient calendaring procedures are employed. *Wide discretion* should be afforded in their application so long as a proper regard is given to their purpose." *Forman & Zuckerman v. Schupak*, 38 N.C. App. 17, 21, 247 S.E.2d

266, 269 (1978) (citation omitted) (emphasis added). Rule 1.1 of the Durham County Family Court Domestic Rules ("rules") provides,

> The purpose of these Rules is to provide for the fair, just, and *timely resolution* of family domestic matters in the District Court Division of the 14th Judicial District, Durham County, in compliance with Rule 40(a), North Carolina Rules of Civil Procedure, and Rule 2(a), General Rules of Practice for Superior and District Courts. *We operate with a "one judge-one family system"* and each case will be assigned to one family court judge who has an assigned Case Coordinator.

14th Jud. Dist. Family Ct. Domestic R. 1.1 (Revised 9/08) (emphasis added). Here, Judge Morey, as the assigned judge, had held numerous hearings over approximately four years, but would soon be moving out of family court and would not be available to hear the motions if the matter were delayed. Based upon the Local Rules, Judge Morey appropriately considered her availability as the assigned judge in her decision to proceed with the hearing.

> One of the primary characteristics of the Family Court is its one judge, one family policy. This policy is often cited as the most critical component of any successful family court, as it helps avoid the fragmentation, the duplication of effort and expense, and the potential for conflicting court orders in a domestic case.

*In re M.A.I.B.K.*, 184 N.C. App. 218, 225, 645 S.E.2d 881, 886 (2007) (citation, quotation marks, and brackets omitted).

Defendant is correct in noting that the rules require pretrial conferences and mediation for custody modification; *see* 14th Jud. Dist. Family Ct. Domestic R. 4.2, 7.1, however, the rules also provide that "[u]pon motion, good cause, and available court time, parties or their attorneys may request that the Court waive the pretrial conference and proceed directly to the hearing to dispose of the issue scheduled for a pretrial hearing[,]" 14th Jud. Dist. Family Ct. Domestic R. 4.2, and that "[t]he Court has discretion to decide whether a case shall be exempted from mediation without a hearing on the matter." 14th Jud. Dist. Family Ct. Domestic R. 7.8. The rules also provide that they "should be construed in such a manner as to avoid technical or unnecessary delay and to promote the ends of justice." 14th Jud. Dist. Family Ct. Domestic R. 1.2.

Considering the rules as a whole, specifically in light of (1) their stated purpose "to provide . . . timely resolution of family domestic

matters[,]" 14th Jud. Dist. Family Ct. Domestic R. 1.1, (2) operating under a "'one judge-one family' system[,]" *id.*, and (3) specific provisions regarding waiver of both pretrial and mediation conferences, *see* 14th Jud. Dist. Family Ct. Domestic R. 4.2, 7.8, we conclude that the trial court did not abuse its discretion in waiving a pretrial conference or mediation based on finding of fact 22. The trial judge who had presided over this case for approximately four years was clearly in the best position to determine whether a pretrial conference and/or mediation would be of sufficient benefit in this highly contentious case to justify further delay of the resolution of the matter. This argument is overruled.

### III. Modification of Custody

**[2]** Defendant next contends "plaintiff failed to meet his burden of proof on his motion for modification of custody, and the trial court committed reversible error in granting the same" because "plaintiff failed to show [(1)] a substantial change in circumstances since entry of the 10 October 2006 permanent custody order[,]" (2) "a connection between his alleged changes and the welfare of the children[,]" and (3) "that a change in custody would be in the best interests of the children." (Original in all caps.) We disagree.

It is well established in this jurisdiction that a trial court may order a modification of an existing child custody order between two natural parents if the party moving for modification shows that a substantial change of circumstances affecting the welfare of the child warrants a change in custody. The party seeking to modify a custody order need not allege that the change in circumstances had an adverse effect on the child. While allegations concerning adversity are acceptable factors for the trial court to consider and will support modification, a showing of a change in circumstances that is, or is likely to be, beneficial to the child may also warrant a change in custody.

As in most child custody proceedings, a trial court's principal objective is to measure whether a change in custody will serve to promote the child's best interests. Therefore, if the trial court does indeed determine that a substantial change in circumstances affects the welfare of the child, it may only modify the existing custody order if it further concludes that a change in custody is in the child's best interests.

The trial court's examination of whether to modify an existing child custody order is twofold. The trial court must determine

whether there was a change in circumstances and then must examine whether such a change affected the minor child. If the trial court concludes either that a substantial change has not occurred or that a substantial change did occur but that it did not affect the minor child's welfare, the court's examination ends, and no modification can be ordered. If, however, the trial court determines that there has been a substantial change in circumstances and that the change affected the welfare of the child, the court must then examine whether a change in custody is in the child's best interests. If the trial court concludes that modification is in the child's best interests, only then may the court order a modification of the original custody order.

When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Our trial courts are vested with broad discretion in child custody matters. This discretion is based upon the trial courts' opportunity to see the parties; to hear the witnesses; and to detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges[.] Accordingly, should we conclude that there is substantial evidence in the record to support the trial court's findings of fact, such findings are conclusive on appeal, even if record evidence might sustain findings to the contrary.

In addition to evaluating whether a trial court's findings of fact are supported by substantial evidence, this Court must determine if the trial court's factual findings support its conclusions of law. With regard to the trial court's conclusions of law, our case law indicates that the trial court must determine whether there has been a substantial change in circumstances and whether that change affected the minor child. Upon concluding that such a change affects the child's welfare, the trial court must then decide whether a modification of custody was in the child's best interests. If we determine that the trial court has properly concluded that the facts show that a substantial change of circumstances has affected the welfare of the minor child and that modification was in the child's best interests, we will defer to the trial

court's judgment and not disturb its decision to modify an existing custody agreement.

*Shipman v. Shipman*, 357 N.C. 471, 473-75, 586 S.E.2d 250, 253-54 (2003) (citations, quotation marks, and brackets omitted).

A. Substantial Change in Circumstances

Here, the trial court found a substantial change of circumstances in finding of fact 23 because:

a. Since the entry of the Permanent Custody Order, the Plaintiff has completed his fellowship in cardiology at Duke and is now an Associate Professor who has tailored his schedule for optimum time to spend with his young children. Further, plaintiff obtained credentials for a certificate in vascular ultrasound which enables him more flexibility to spend time with his family. Because of his increased self-awareness, he is increasingly capable of being a strong parent for these children.

b. Since the entry of the Permanent Order, the plaintiff has continued his therapy with Dr. Denise Barnes and is more aware of his emotional, psychological feelings and takes appropriate medication as needed.

c. Since the entry of the Permanent Order, the plaintiff has remarried. The plaintiff's wife appeared and testified and the Court finds that she respects her role as a step-parent and has a close, nurturing relationship with the minor children. The availability of this assistance will provide a stable and nurturing parental figure which will provide the children with an additional role model.

. . . .

e. Since the entry of the Permanent Order, the children have grown and matured. Specifically, [son] is doing well in school, now in the fourth grade. He has close friendships with children in the father's neighborhood. [Son] continues to be in therapy with Dr. J. Williams and appears to be thriving.

f. Since the entry of the Permanent Order, [daughter] is no longer a toddler, but a young child who is in her second year of preschool. She is sociable, funny, and appears to be doing well in the presence of both parents. She has continued to be in therapy and is very close to her brother . . . .

g. There have been no acts of domestic violence since 2003 as the parties have had no significant personal contact over the past three years.

At the hearing regarding modification of the custody order plaintiff, plaintiff's supervisor, plaintiff's wife, and Sarah Timberlake, who sometimes babysat the children, all gave testimony which would support findings of fact 23(a)-(g). Defendant contends that "[t]he only support for . . . Findings [a and b above] are Plaintiff's self-serving declarations that he had changed." Though there was evidence in addition to plaintiff's own testimony to support many of the findings of fact, the trial court could have relied only upon plaintiff's testimony if it deemed his testimony of sufficient credibility and weight. *In Re Whisnant*, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984) ("[W]hen a trial judge sits as both judge and juror, as he or she does in a non-jury proceeding, it is that judge's duty to weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom." (citation and quotation marks omitted)). We therefore conclude that there was substantial evidence upon which the trial court could find and conclude that there had been a substantial change of circumstances due to, *inter alia*, plaintiff's increased flexibility in his work schedule, continued therapy and implementation of what he learned in therapy, and his healthy remarriage.

B. Welfare of the Children

The trial court also found that finding of fact 23(a)-(g) and the following findings in finding of fact 24 constituted a "substantial change of circumstances" which "affects the welfare of the minor children":

a. The children have matured and progressed significantly since Dr. Calloway's custody evaluation which was a consideration in the entry of the permanent custody order.

b. The mother does not readily acknowledge the children's positive relationship with their father and the fact that they have matured and are capable of spending more quality time with him; and her continued animosity and perception at this time has adversely affected the welfare of the children.

c. The Order of "sole custody" in favor of the mother has resulted in alienation of the father in their school activities and has

resulted in limiting the father to the childrens' [ sic] medical/psychological information, all to the detriment to the welfare of the children.

d. Since the entry of the Permanent Order, both parents are now uniquely qualified to be parents on an equal basis with their children. Both parents have much to offer the children from their unique parenting skills and both children are well cared for by both parents.

e. Two years ago the court-appointed forensic psychologist found that once the children matured, they could tolerate their father's intense displays of emotion (which were primarily directed at the defendant and have now diminished) and that the parents should share physical custody of the children on an equal basis. The father's intense display of emotions has lessened significantly and will continue to lessen as he settles into a new marriage and has more time with his children.

Again, there was substantial evidence in the transcript to support the trial court's findings as to the benefits to the children from plaintiff's flexible work schedule, plaintiff's progression in therapy, plaintiff's healthy remarriage, and plaintiff's "lessened" displays of emotion. In addition, there was substantial evidence to support the trial court's findings of an adverse impact on the children from defendant's continued "animosity and perception[,]" and plaintiff's limited access to medical and psychological information. Defendant's primary argument again is that the trial court's order is based only upon plaintiff's "self-serving declarations[,]" but as noted above, plaintiff's testimony is evidence upon which the trial court, in its discretion, may rely. *Id.* The evidence supports the trial court's findings and conclusion that the substantial changes in circumstances affected the welfare of the minor children.

C. Best Interests

As there was substantial evidence supporting the trial court's findings and conclusion that there had been a substantial change in circumstances and that these changes had affected the welfare of the children, we conclude the trial court did not err in concluding that joint legal custody was in the best interests of the children. Defendant has not demonstrated any reason that we should not "defer to the trial

court's judgment and not disturb its decision to modify an existing custody agreement."[4] *Shipman* at 475, 586 S.E.2d at 254. Therefore, this argument is overruled.

## IV. Due Process

**[3]** Defendant also contends that "the trial court committed reversible error in entering its 9 November 2007 order because the cumulative effect of the court's numerous violations of defendant's procedural rights denied defendant's fundamental right to due process." (Original in all caps.) Defendant claims that [i]f the trial court's misconduct in this case is viewed in its totality, the court's Modification Order cannot withstand the test of fundamental fairness." However, we again note that defendant has failed to direct our attention to anywhere in the record where she raised a constitutional issue before the trial court, and "[a]ppellate courts will not ordinarily pass upon a constitutional question unless it affirmatively appears that such question was raised and passed upon in the trial court." *Cumber* at 131-32, 185 S.E.2d at 144. Even assuming *arguendo* that defendant had preserved a due process issue, we have already determined that the trial court did not violate the Local Rules or commit any "misconduct" in the scheduling and hearing of this matter. As defendant has failed to direct our attention to any point where she raised a due process violation to the trial court, this argument has been waived.

## V. New Trial

**[4]** Lastly, defendant contends that "the trial court abused its discretion in denying defendant's motion for a new trial pursuant to Rule 59." (Original in all caps.) However, defendant's arguments regarding a new trial are the same as those presented above, all of which have been overruled or waived. Therefore, this argument is also overruled.

## VI. Conclusion

We conclude that the trial court properly modified the custody order between plaintiff and defendant and denied defendant's motion for a new trial, and therefore we affirm.

---

4. We note that defendant argues briefly that the trial court erred in excluding her evidence of plaintiff's "continued bad conduct[,]" specifically defendant's exhibits 7 and 8. However, defendant cites no legal authority for these errors. *See* N.C.R. App. P. 28(b)(6). Furthermore, defendant's exhibits 7 and 8, which defendant contends show plaintiff's continued hostile behavior since the entry of the 2006 custody order, do not contain a single document from plaintiff dated *after* entry of the 2006 custody order and therefore could not be used to establish plaintiff's "continued bad conduct" after entry of the 2006 custody order.

AFFIRMED.

Judges ELMORE and ERVIN concur.